T.C. Memo. 2005-241

UNITED STATES TAX COURT

GARRETT LAWRENCE BAILEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6164-04L.          Filed October 13, 2005.

Garrett Lawrence Bailey, pro se.

<u>Aely K. Ullrich</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

MARVEL, <u>Judge</u>:  Pursuant to section 6330(d),[1] petitioner
seeks review of respondent's determination to proceed with the
collection of petitioner's 1995, 1996, and 1999 Federal income
tax liabilities.

---

[1]All section references are to the Internal Revenue Code in
effect at all relevant times.

## FINDINGS OF FACT

Some of the facts have been stipulated. We incorporate the stipulated facts into our findings by this reference. Petitioner resided in Pasadena, California, when his petition in this case was filed. Petitioner is a lawyer authorized to practice law in the State of California who, during the years at issue, was employed as an associate in a law firm.

1995 and 1996 Tax Liabilities

Petitioner filed Form 1040, U.S. Individual Income Tax Return, for 1995 and 1996. On each return, petitioner reported his filing status as married filing separate and claimed three personal exemptions: One for himself, one for his wife, and one for his dependent son. Petitioner also claimed Schedule C, Profit or Loss From Business or Profession (Sole Proprietorship), business expenses of more than $50,000 on each of his 1995 and 1996 returns.

In December 1997, respondent notified petitioner of changes to petitioner's 1995 return as a result of an examination. The changes included the disallowance of two of three personal exemptions and all of the Schedule C business expenses claimed on petitioner's 1995 return for lack of substantiation.

In January 1998, petitioner sent letters to respondent requesting audit reconsideration and/or an Appeals conference

regarding the 1995 examination changes.[2]  Petitioner's case was assigned to Examiner L. Valenzuela (Ms. Valenzuela).  After Ms. Valenzuela reviewed documentation furnished by petitioner, she prepared a revised examination report for 1995 and mailed it to petitioner with a letter dated June 12, 1998, offering petitioner an appointment to present any additional information he wished to submit.

By letter dated June 16, 1998, petitioner advised respondent that he did not agree with the adjustments in the revised examination report and requested a hearing with respondent's Appeals Office.  By letter dated June 26, 1998, respondent informed petitioner that an appointment had been scheduled for July 30, 1998.  Petitioner did not appear for the appointment and did not contact respondent to explain his failure to appear.

On August 5, 1998, respondent issued, and served on petitioner, a summons requiring petitioner to appear on August 27, 1998, and to produce various documents pertaining to petitioner's 1995 return.  Petitioner did not appear on August 27, 1998, and he did not produce the requested documentation.

---

[2]Petitioner also requested reconsideration of 1996 examination changes, but the 1996 examination report was not issued until September 1998.

By letter dated September 16, 1998, respondent advised petitioner that changes had been made to his 1996 return as described in a report of income tax examination changes enclosed with the letter.

On April 15, 1999, respondent mailed, by certified mail, a notice of deficiency with respect to petitioner's 1995 and 1996 taxable years to petitioner's last known address at 768 Florecita Lane, Altadena, CA 91001. Petitioner did not file a petition in this Court to contest the notice of deficiency. On August 9, 1999, respondent assessed the income tax deficiencies, additions to tax, and penalties set forth in the notice of deficiency, and statutory interest.

On a date that does not appear in the record, petitioner again asked respondent to reconsider petitioner's 1995 and 1996 tax liabilities. By letter dated June 21, 2000, respondent advised petitioner that he would need to provide respondent with documentation before respondent could grant an audit reconsideration for 1995 and 1996. Respondent requested that petitioner provide the documentation by July 13, 2000. Petitioner did not provide the requested documentation, so petitioner's request was denied. By letter dated December 27, 2000, respondent explained to petitioner why a conference had not been granted as requested by petitioner.

Petitioner subsequently sent to respondent copies of one registration form and one check, with no explanation of the nature or business purpose of the expenses reflected in the documents. By letter dated March 6, 2001, respondent notified petitioner that he had completed the audit reconsideration of petitioner's 1995 tax liability with no change. In the letter, respondent stated that "The information you have furnished to date, including to the district office does not establish that any of the claimed expenses were ordinary and necessary and incurred in the course of a trade or business." Respondent also notified petitioner that he could request an Appeals conference if he disagreed with respondent's decision.

By letter dated April 1, 2001, petitioner appealed respondent's findings. Petitioner's appeal was assigned to Appeals Officer Willard A. Stone (Mr. Stone). By letter dated June 25, 2002, Mr. Stone advised petitioner that he had scheduled a conference for July 25, 2002, and that petitioner should bring certain enumerated documents to the conference. At petitioner's request, the conference was rescheduled for August 23, 2002. Petitioner did not attend the August 23, 2002, conference and did not supply the requested documentation. By letter dated September 13, 2002, Mr. Stone notified petitioner that petitioner had not established his entitlement to any of the deductions disallowed in the notice of deficiency, that petitioner's case

would be returned to the service center for further processing, and that collection activity would recommence.[3]

## 1999 Tax Liabilities

Petitioner filed his 1999 Federal income tax return on May 17, 2001. Petitioner reported an income tax liability of $9,417 and withheld income tax of $9,450.43 and claimed an overpayment.[4] However, because the 1999 return was filed late, respondent assessed interest and a late filing addition to tax on September 10, 2001. The 1999 tax liability at issue in this case consists

---

[3]Various collection notices, including a notice of intention to levy, had been sent to petitioner with respect to his 1995 and 1996 tax liabilities before petitioner filed his appeal in April 2001.

[4]On his 1999 return, petitioner claimed total tax payments for 1999 of $12,400.56, consisting of withholding credits of $9,450.43 and estimated tax payments and/or an amount applied from his 1998 return of $2,950.13, a total tax liability of $9,417, and an overpayment of $2,983.56. Although respondent credited the withheld income tax of $9,450.43 against petitioner's reported tax liability of $9,417 for 1999, respondent did not credit any estimated tax payments or any overpayment from 1998 against petitioner's 1999 tax liability. Because the parties did not include a copy of petitioner's 1998 return in the record, we cannot ascertain whether petitioner claimed an overpayment for 1998. We note, however, that the Form 4340, Certificate of Assessments, Payments, and Other Specified Matters, for 1995 that was admitted into evidence by stipulation shows an overpayment credit of $2,609.30 from 1998 that was applied to reduce petitioner's 1995 tax liability on Apr. 15, 1999. We assume, therefore, that petitioner claimed an overpayment on his 1998 return that was allowed, at least in part, as a credit against his 1995 tax liability. Petitioner does not assert that respondent failed to give him credit for his 1998 overpayment, nor did he introduce any evidence to prove that respondent incorrectly applied petitioner's tax payments.

primarily of the assessed interest and addition to tax resulting from the late filing of petitioner's 1999 return.[5]

On December 12, 2002, respondent issued petitioner a Final Notice of Intent to Levy with respect to petitioner's 1995, 1996, and 1999 tax liabilities.

Petitioner's Health Problems During 1998-2000

In late 1998 and throughout 1999, petitioner suffered from a liver ailment.  In June 1999, petitioner's doctor recommended that petitioner obtain a liver transplant consultation.  In December 1999, petitioner was placed on the UCLA liver transplant list.  During 2000, petitioner underwent several surgeries, including a liver transplant.

Although petitioner experienced pain and some loss of function from his liver condition during the period of his illness, he continued to work at the law firm and to make court appearances, except for a 6-month period in connection with his surgeries.

Section 6330 Hearing

On January 9, 2003, petitioner timely filed a Request for a Collection Due Process Hearing (section 6330 hearing) for 1995,

---

[5]Form 4340 for 1999 reveals that respondent assessed an income tax liability of $9,627 in connection with the filing of petitioner's 1999 return.  The record does not explain why the assessed income tax liability of $9,627 is higher than petitioner's reported income tax liability of $9,417.  However, petitioner offered no evidence at trial that the assessment was incorrect.

1996, and 1999.  The request stated that petitioner disagreed with the amounts of the assessed deficiencies and that he wished to submit an offer-in-compromise because he was unable to satisfy the tax liability due to his health and financial conditions. On May 20, 2003, respondent sent petitioner an offer-in-compromise package to fill out and bring to his section 6330 hearing.

By letter dated January 15, 2004, Appeals Officer Zane Janish (Mr. Janish) contacted petitioner regarding his section 6330 hearing request.  Mr. Janish stated that petitioner needed to complete and submit the enclosed Form 433-A, Collection Information Statement For Individuals, and his delinquent 2001 and 2002 Federal income tax returns by February 17, 2004, in order for petitioner's offer-in-compromise to be considered.  Mr. Janish also warned petitioner that if petitioner did not submit the requested documents by February 17, 2004, petitioner's section 6330 hearing "will consist of a review of the information in [petitioner's] * * * request and case file."  Petitioner failed to submit the Form 433-A and his 2001 and 2002 tax returns[6] to Mr. Janish.

---

[6]Petitioner did not file his 2001 and 2002 tax returns until Mar. 17, 2004.

Notice of Determination and Tax Court Petition

On March 10, 2004, respondent sent petitioner a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) for tax years 1995, 1996, and 1999. In the notice of determination, respondent determined the following:

1. All legal and procedural requirements for proceeding with collection have been met;

2. Petitioner was properly precluded from submitting an offer-in-compromise because he did not submit Form 433-A and his delinquent 2001 and 2002 tax returns as required and because petitioner was not current with his filing obligations;

3. Petitioner was properly precluded from challenging his 1995 and 1996 income tax liabilities because respondent had issued a notice of deficiency for 1995 and 1996, and petitioner had not provided any evidence to prove that petitioner did not receive the notice of deficiency;

4. Petitioner failed to submit any evidence to substantiate that the income tax liability reported on his 1999 return was incorrect; and

5. Petitioner failed to submit any evidence to establish that the proposed levy does not balance the need for efficient collection of taxes with the legitimate concern that any collection action be no more intrusive than necessary.

Petitioner filed a timely petition contesting respondent's determination.  Petitioner disputes the validity of the deficiencies and alleges that the proposed collection action is more intrusive than necessary.

OPINION

Section 6330(a) provides that no levy may be made on any property or right to property of any person unless the Secretary has notified such person in writing of the right to a hearing before the levy is made.  If the person makes a timely request for a hearing, a hearing shall be held by the Internal Revenue Service Office of Appeals.  Sec. 6330(b)(1).

The administrative hearing must be conducted pursuant to section 6330(c), (d), and (e).  The taxpayer may raise any relevant issue to the collection action at the hearing, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives (such as offers-in-compromise).  Sec. 6330(c)(2)(A).  Additionally, the taxpayer may contest the validity of the underlying tax liability, but only if he did not receive a notice of deficiency or otherwise have an opportunity to dispute the tax liability. Sec. 6330(c)(2)(B).  The phrase "underlying tax liability" includes the tax deficiency, any penalties and additions to tax, and statutory interest.  Katz v. Commissioner, 115 T.C. 329, 339 (2000).

Following a hearing, the Appeals Office must determine whether the proposed levy action may proceed. Sec. 6330(c)(3). In so doing, the Appeals Office is required to take into consideration the verification presented by the Secretary, the issues raised by the taxpayer, and whether the proposed collection action appropriately balances the need for efficient collection of taxes with concerns regarding the intrusiveness of the proposed collection action. Id. The taxpayer may petition the Tax Court or, in limited cases, a Federal District Court for judicial review of the Appeals Office's determination. Sec. 6330(d).

If the taxpayer files a timely petition for judicial review, the applicable standard of review depends on whether the underlying tax liability is properly at issue. Where the underlying tax liability is properly at issue, the Court reviews any determination regarding the underlying tax liability de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000). The Court reviews any other administrative determination regarding the proposed collection action for abuse of discretion. Id.

I. Petitioner's Challenge to the Underlying Tax Liabilities

    A. Mailing and Delivery of Notice of Deficiency--1995 and 1996 Tax Liabilities

Petitioner argues that because he did not receive the notice of deficiency that respondent issued for 1995 and 1996, he should not have been precluded from challenging the validity of

his 1995 and 1996 tax liabilities.  Petitioner stipulated that a notice of deficiency for 1995 and 1996, "issued by the Office of the Internal Revenue Service at Los Angeles, California, was mailed to the Petitioner on April 15, 1999."  Petitioner also stipulated that his address at the time the notice of deficiency was mailed was the same address used to mail the notice of deficiency and that the notice of deficiency was not returned as undeliverable.

"There is a strong presumption in the law that a properly addressed letter will be delivered, or offered for delivery, to the addressee."  Zenco Engg. Corp. v. Commissioner, 75 T.C. 318, 323 (1980), affd. without published opinion 673 F.2d 1332 (7th Cir. 1981); see also Sego v. Commissioner, supra at 611 ("In the absence of clear evidence to the contrary, the presumptions of official regularity and of delivery justify the conclusion that the statutory notice was sent and that attempts to deliver were made in the manner contended by respondent.").  Proper mailing of the notice of deficiency places the risk of nondelivery on the taxpayer.  Figler v. Commissioner, T.C. Memo. 2005-230; Barrash v. Commissioner, T.C. Memo. 1987-592, affd. without published opinion 862 F.2d 872 (5th Cir. 1988).

Petitioner does not dispute that the notice of deficiency was mailed to his last known address, and he does not unequivocally deny that he received it.  The only evidence petitioner has produced to rebut the presumption of delivery is

his testimony that he "[didn't] * * * recall receiving it" and he "did not document the receipt of it." Petitioner admits that respondent mailed the notice of deficiency to the proper address, and petitioner received several other items of correspondence mailed by respondent to the same address both before and after the notice of deficiency was issued. Because petitioner has not produced any convincing evidence to rebut the presumption of delivery, we find that petitioner received the notice of deficiency.

B. Other Opportunity To Dispute 1995 and 1996 Tax Liabilities

Petitioner also argues that he did not have an opportunity to dispute his 1995 and 1996 tax liabilities because he was suffering from severe health problems that began in late 1998 and continued through 2000.

Section 6330(c)(2)(B) provides that a taxpayer may dispute the existence or amount of unpaid tax liability if he did not receive a notice of deficiency or otherwise have an opportunity to dispute such tax liability. The "opportunity to dispute such tax liability" includes a conference with the Appeals Office, either before or after the tax liability is assessed. Sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

Even if we assume that petitioner did not receive the notice of deficiency mailed by respondent on April 15, 1999, the record establishes that petitioner had several opportunities between

April 15, 1999, and September 13, 2002, to dispute his 1995 and 1996 tax liabilities administratively.[7]  For example, in 2002, when petitioner was "feeling normal and up to par health wise", Mr. Stone scheduled and then rescheduled a conference with petitioner to discuss respondent's decision upholding the disallowance of petitioner's exemptions and Schedule C expenses. Petitioner did not attend the conference or submit any of the requested documentation.

Because petitioner failed to prove that he did not receive the statutory notice of deficiency that was mailed to him on April 15, 1999, with respect to his 1995 and 1996 tax liabilities and because petitioner otherwise had an opportunity over a 3-year period to dispute his 1995 and 1996 tax liabilities, we hold that petitioner was properly precluded under section 6330(c)(2)(B) from challenging the existence and amount of his 1995 and 1996 tax liabilities in his section 6330 proceeding.

C.  1999 Tax Liability

Respondent concedes that no notice of deficiency was sent to petitioner for the 1999 tax year and that petitioner was not precluded from challenging his 1999 tax liability at his section 6330 hearing.  However, although petitioner made a blanket

---

[7]Petitioner does not argue that the "opportunity to dispute" language in sec. 6330(c) refers to an opportunity to dispute a tax liability in court nor does he challenge respondent's interpretation of sec. 6330(c) in sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

statement in his petition that he was contesting the validity of all the tax liabilities at issue in this case, petitioner did not argue at trial or in his posttrial briefs that respondent's determination for 1999 was incorrect.  Petitioner also failed to introduce any evidence at trial regarding his 1999 tax liability.  Accordingly, we conclude that petitioner has abandoned his challenge to his 1999 tax liability.  See, e.g., <u>Bradley v. Commissioner</u>, 100 T.C. 367, 370 (1993); <u>Rybak v. Commissioner</u>, 91 T.C. 524, 566 n.19 (1988).

II.  <u>Petitioner's Challenge to Respondent's Determination To Proceed With the Collection Action</u>

In addition to his argument that respondent's proposed collection action is overly intrusive because the assessments of petitioner's tax liabilities are incorrect, petitioner argues that he should have been allowed to submit an offer-in-compromise.[8]  We review respondent's determination to proceed with collection for abuse of discretion.  <u>Sego v. Commissioner</u>, 114 T.C . at 610.

---

[8]Even if we had concluded that petitioner could challenge the validity of his 1995 and 1996 tax liabilities in this proceeding, petitioner would still not have prevailed.  The documentation in the record upon which petitioner relied to substantiate his Schedule C expenses was not sufficient to prove that the expenses were deductible.  Petitioner paid most of the expenses in connection with his efforts to start several new businesses during 1995 and 1996.  Startup expenses resulting in an active trade or business generally are not deductible for a year earlier than the one in which such business begins.  Sec. 195.  Petitioner's car expenses also were not deductible because petitioner failed to satisfy the substantiation requirement of sec. 274(d).

The Commissioner will not process an offer-in-compromise where the information provided is insufficient to allow the Commissioner to evaluate its acceptability. Sec. 301.7122-1(d)(2), Proced. & Admin. Regs. The Commissioner will not process an offer-in-compromise if the taxpayer has not filed all required tax returns or completed the required forms. 1 Administration, Internal Revenue Manual (CCH), sec. 5.8.3.4.1(1)(a), (d), at 16,274.

Mr. Janish provided petitioner with a list of required paperwork that petitioner needed to submit in order for an offer-in-compromise to be processed, and he sent petitioner a blank Form 433-A. Petitioner did not submit any of the required forms for an offer-in-compromise, including Form 433-A, or file his 2001 and 2002 tax returns by the deadline set by Mr. Janish. He did not request an extension of the deadline or otherwise communicate with Mr. Janish. Petitioner did not provide Mr. Janish with any evidence of his alleged inability to pay.

At trial, petitioner did not offer any credible evidence to support his position that Mr. Janish did not properly evaluate his collection information. In fact, the record demonstrates that the determination by Mr. Janish was entirely appropriate. Mr. Janish verified from the information available to him that all legal and procedural requirements had been met. Mr. Janish also gave petitioner the opportunity to submit the necessary

documents to make an offer-in-compromise.  Petitioner did not submit the necessary paperwork or any other information that might have influenced Mr. Janish's determination.  Because of petitioner's consistent failure to communicate with Mr. Janish, Mr. Janish committed no abuse of discretion sustaining the proposed levy as an appropriate collection action under the circumstances.

III.  Conclusion

We hold that the Appeals Office did not abuse its discretion in determining that respondent may proceed with the proposed collection action.  We have considered the remaining arguments of both parties for results contrary to those discussed herein and, to the extent not discussed above, conclude those arguments are irrelevant, moot, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.