128 T.C. No. 6

UNITED STATES TAX COURT

JOSEPH E. LEWIS, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 6284-06L.                    Filed March 28, 2007.

        P filed his 2002 income tax return late.  P
included payment for the reported tax due with his
return.  R assessed additions to tax under sec.
6651(a)(1) and (2), I.R.C., for late filing and late
payment.  P requested an abatement of the additions to
tax, which was ultimately denied after a hearing before
R's Appeals Office.  R then initiated a collection
action, and P now seeks review of his liability for
additions to tax under sec. 6330, I.R.C.  R moves for
summary judgment pursuant to sec. 301.6330-1(e)(3),
Q&A-E2, Proced. & Admin. Regs.  R argues that P had an
opportunity to dispute the underlying liability in a
conference with R's Appeals Office and thus cannot
properly raise the underlying liability again in a sec.
6330, I.R.C., collection review proceeding.

        <u>Held</u>:  Sec. 301.6330-1(e)(3), Q&A-E2, Proced. &
Admin. Regs., is valid.

*Held*, *further*, because P had a conference with R's Appeals Office, he is precluded from disputing the assessed additions to tax again in his sec. 6330, I.R.C., action.


Joseph E. Lewis, pro se.

Linette B. Angelastro, for respondent.


OPINION


GOEKE, Judge:  This matter is before the Court on respondent's motion for summary judgment.  Respondent moves for summary judgment, pursuant to section 6330(c)(2)(B)[1] and section 301.6330-1(e)(3), Proced. & Admin. Regs.  Respondent argues that because petitioner was offered and participated in an Appeals conference, he is precluded from properly raising his underlying tax liability again in a subsequent collection review proceeding. Because we find section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., to be a reasonable expression of Congress's intent and because petitioner participated in a conference with Appeals in which he was permitted to dispute his underlying tax liability, we hold that petitioner may not properly raise his tax liability again in a collection review hearing or before this Court.  Accordingly, respondent's motion will be granted.

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure.

## Background

At the time his petition was filed, petitioner resided in Lancaster, California. Petitioner is a plumber by trade. Petitioner and his wife jointly filed their Form 1040, U.S. Individual Income Tax Return, for the 2002 tax year on January 25, 2004. Petitioner reported a tax due of $11,636 and enclosed payment of that amount with the return. Petitioner's return was originally due on April 15, 2003. Respondent assessed the tax reported on the return, along with additions to tax, pursuant to section 6651(a)(1) and (2), of $2,618.10 for late filing and $581.80 for late payment.

Petitioner then submitted a request to respondent to abate the assessments of 2002 additions to tax based on reasonable cause. Petitioner argued that the additions to tax for his late filing should be abated because his accountant, who possessed petitioner's tax documents, was hospitalized with stomach cancer at the time petitioner's taxes were due. Petitioner's request was ultimately assigned to an Appeals officer. The Appeals officer reviewed the circumstances of the late filing, including correspondence from petitioner as well as petitioner's employer, and declined to abate the additions to tax. The Appeals officer then sent petitioner a letter indicating that his appeal had been denied. On May 28, 2005, respondent issued to petitioner Letter 1058, Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing, advising petitioner that respondent intended

to levy on petitioner's property to collect the unpaid liability for tax year 2002.

Thereafter, petitioner timely submitted Form 12153, Request for a Collection Due Process Hearing, on June 15, 2005. In his Form 12153, petitioner again requested an abatement of the late filing and late payment additions to tax assessed for tax year 2002. Petitioner continued to argue that his late filing be excused because of his accountant's illness.

Petitioner's case was then assigned to a settlement officer for a collection review hearing. The settlement officer reviewed the administrative file and determined that petitioner's request for an abatement of the late filing and late payment additions to tax had already been considered by Appeals. Thus, the settlement officer determined that petitioner's underlying liability could not be raised properly again in his collection review hearing. Petitioner did not raise any additional issues with respect to the levy notice.

On March 3, 2006, respondent issued to petitioner a Notice of Determination Concerning Collection Action(s) under Section 6320 and/or 6330. In response to the notice of determination, petitioner filed a petition with this Court on March 30, 2006. The only question raised in the petition is whether there is

reasonable cause to abate the additions to tax imposed by respondent under section 6651(a)(1) and (2) for late filing and late payment.

## Discussion

### I. Section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

Respondent argues that pursuant to section 6330(c)(2)(B) and section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., where a taxpayer has an opportunity for a conference with respondent's Appeals Office before a collection action has begun,[2] then the amount and existence of the underlying tax liability can neither be raised properly in a collection review hearing nor on appeal to this Court. Thus, respondent argues for summary judgment on the ground that petitioner's participation in a conference with the Appeals Office to consider his request for abatement of additions to tax precluded him from raising his underlying liability in his collection review hearing or in this Court.

We have previously held that where a taxpayer filed amended returns and was provided with an opportunity for a hearing with respondent's Appeals Office, the taxpayer was not entitled to challenge the underlying liability in a subsequent collection

---

[2] In this case petitioner actually participated in the prior conference with Appeals. However, it appears respondent's position is that merely the offer of a prior conference with Appeals is a sufficient opportunity to preclude subsequent review of the liability in a collection review hearing. We do not decide the more narrow question of whether simply an offer of a conference with Appeals is sufficient to preclude subsequent collection review consideration.

review proceeding. Farley v. Commissioner, T.C. Memo. 2004-168 (noting that the taxpayer still had the opportunity to seek judicial review by paying the tax and filing suit for a refund in District Court); see also Bailey v. Commissioner, T.C. Memo. 2005-241 (while acknowledging that the taxpayer had not challenged the validity of section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., noting that the taxpayer was afforded several opportunities to dispute his tax liability administratively). We have also previously held, in a Court-reviewed Opinion, that a taxpayer who has self-assessed a liability has not had the opportunity to dispute his tax liability and may raise the underlying liability in a collection review proceeding. See Montgomery v. Commissioner, 122 T.C. 1, 9 (2004) (noting that the taxpayers had not had "an opportunity to 'dispute' their tax liability * * * in any sense of the term"). Finally, while not binding on this Court, we note that many District Courts have held that a taxpayer is precluded from raising the underlying liability where he was provided with an opportunity for a conference with Appeals. See, e.g., Abu-Awad v. United States, 294 F. Supp. 2d 879 (S.D. Tex. 2003) (finding penalty abatement request was sufficient opportunity to dispute underlying tax liability for purposes of section 6330(c)(2)(B)); Pelliccio v. United States, 253 F. Supp. 2d 258 (D. Conn. 2003) (holding that a taxpayer who was notified of his liability and

offered an opportunity for an Appeals hearing, could not dispute the liability again in a collection review hearing).

We have not, however, previously addressed the validity of section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., and must do so in order to resolve respondent's summary judgment motion.  We begin our analysis with the statutory language.

Section 6330 was enacted as part of the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3401, 112 Stat. 746 (the Restructuring and Reform Act). Section 6330 generally provides that respondent cannot proceed with the collection of a person's taxes by levy until the person has been given notice and the opportunity for an administrative review of the matter (in the form of an Appeals Office hearing) and, if dissatisfied, with judicial review of the administrative determination.  See Davis v. Commissioner, 115 T.C. 35, 37 (2000); Goza v. Commissioner, 114 T.C. 176, 179 (2000).  Section 6330(d) provides for judicial review of the administrative determination in the Tax Court or a Federal District Court, as may be appropriate.[3]

---

[3]Sec. 6330(d)(1) has now been amended to provide for judicial review of the administrative hearing exclusively in the Tax Court.  Pension Protection Act of 2006, Pub. L. 109-280, sec. 855(a), 120 Stat. 1019 (effective for determinations made more than 60 days after the date of enactment).

Section 6330(c) prescribes the matters that a person may raise at an Appeals Office hearing. Section 6330(c)(2)(A) provides that a person may raise collection issues such as spousal defenses, the appropriateness of respondent's intended collection action, and possible alternative means of collection. See Sego v. Commissioner, 114 T.C. 604, 609 (2000); Goza v. Commissioner, supra. Section 6330(c)(2)(B) establishes circumstances under which a person may challenge the existence or amount of his or her underlying tax liability. Under section 6330(c)(4), however, a person is prohibited from raising in a collection review proceeding an issue that was raised and considered at a previous administrative or judicial proceeding if the person seeking to raise the issue "participated meaningfully" in such hearing or proceeding.[4]

Because respondent has not argued section 6330(c)(4) as a basis for summary judgment, we decide this matter solely with respect to petitioner's ability to raise his underlying liability pursuant to section 6330(c)(2)(B). Section 6330(c)(2)(B)

---

[4] Respondent has previously stated that "Because section 6330(c)(2)(B) explicitly applies to challenges to tax liability, section 6330(c)(4) with its more stringent requirement of meaningful participation applies to non-liability issues." Office of Chief Counsel Notice CC-2003-016 at 20 (May 29, 2003). While not clear whether respondent continues to adhere to this limited interpretation of sec. 6330(c)(4), respondent has not argued sec. 6330(c)(4) as a basis to preclude review of the underlying liability in this case. See Office of Chief Counsel Notice CC-2006-019 at 33 (Aug. 18, 2006) (updating and replacing Office of Chief Counsel Notice CC-2003-016 and merely restating the language of sec. 6330(c)(4)).

provides:

(2). Issues at hearing.--

*     *     *     *     *     *     *

(B) Underlying liability.--The person may also raise at the hearing challenges to the existence or amount of the underlying tax liability for any tax period if the person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability.

Respondent has promulgated regulations regarding section 6330(c)(2)(B) pursuant to his authority under section 7805(a). Section 301.6330-1(e), Proced. & Admin. Regs., provides in pertinent part:

(e) Matters considered at CDP hearing.--(1) In general. * * * The taxpayer also may raise challenges to the existence or amount of the tax liability specified on the CDP Notice for any tax period shown on the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for that tax liability or did not otherwise have an opportunity to dispute that tax liability. * * *

Section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., provides in pertinent part:

(3) Questions and answers. The questions and answers illustrate the provisions of this paragraph (e) as follows:

*     *     *     *     *     *     *

Q-E2. When is a taxpayer entitled to challenge the existence or amount of the tax liability specified in the CDP Notice?

A-E2. A taxpayer is entitled to challenge the existence or amount of the tax liability specified in

the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute such liability. Receipt of a statutory notice of deficiency for this purpose means receipt in time to petition the Tax Court for a redetermination of the deficiency asserted in the notice of deficiency. An opportunity to dispute a liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability.[5]

Where, as here, respondent has promulgated interpretive regulations with respect to a statutory provision, we have generally applied the analysis set forth by the Supreme Court in National Muffler Dealers Association, Inc. v. United States, 440 U.S. 472 (1979). Under National Muffler, an interpretive regulation is valid if it implements a congressional mandate in a reasonable manner. Id. at 476-477. An interpretive regulation

---

[5]The regulations have been amended, and the answer A-E2 now provides:

A taxpayer is entitled to challenge the existence or amount of the underlying liability for any tax period specified on the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute such liability. Receipt of a statutory notice of deficiency for this purpose means receipt in time to petition the Tax Court for a redetermination of the deficiency determined in the notice of deficiency. An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability. An opportunity for a conference with Appeals prior to the assessment of a tax subject to deficiency procedures is not a prior opportunity for this purpose.

Sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs. (applicable to requests for hearings on or after November 16, 2006).

is reasonable if it "harmonizes with the plain language of the statute, its origin, and its purpose."  Id. at 477.

Following its decision in National Muffler, the Supreme Court decided Chevron U.S.A., Inc. v. Natural Res. Def. Council, Inc., 467 U.S. 837 (1984).  In Chevron, the Court stated that when reviewing an agency's regulatory implementation of a statute, we look first to whether Congress has directly spoken to the precise question at issue.  Id. at 842.  If congressional intent is clear, our inquiry ends, and we apply the unambiguously expressed intent of Congress.  Id. at 842-843.  However, if congressional intent is not clear, the question is whether the regulation is based on a permissible construction of the statute. Id.

This Court has, on a number of occasions, considered Chevron's effect on National Muffler and the review of interpretive tax regulations.  See, e.g., Swallows Holding, Ltd. v. Commissioner, 126 T.C. 96, 131 (2006) (discussing the review of Federal tax regulations under National Muffler in relation to Chevron and stating that Chevron restated National Muffler in a more practical two-part test); Cent. Pa. Sav. Association & Subs. v. Commissioner, 104 T.C. 384, 392 (1995) (same) (noting the Supreme Court's application of National Muffler after Chevron). Whether our analysis is guided by National Muffler or by Chevron, the result would be the same.

In evaluating the validity of section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., we first consider whether Congress has spoken directly to the precise question at issue. In answering this question, we are instructed not to confine our examination to a particular statutory provision in isolation. Square D Co. & Subs. v. Commissioner, 118 T.C. 299, 308 (2002) (citing FDA v. Brown & Williamson Tobacco Corp., 529 U.S. 120, 133 (2000)), affd. 438 F.3d 739 (7th Cir. 2006). The meaning, or ambiguity, of certain words or phrases may become evident only when placed in context. FDA v. Brown & Williamson Tobacco Corp., supra at 132-133 (citing Brown v. Gardner, 513 U.S. 115, 118 (1994)). It is a "'fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme.'" Id. (quoting Davis v. Mich. Dept. of Treasury, 489 U.S. 803, 809 (1989)).

Neither the Restructuring and Reform Act nor the Code defines what is meant by "otherwise have an opportunity to dispute" a tax liability. Further, a fair reading of the section suggests different possible meanings. On the one hand, it can be read to mean an opportunity to challenge the underlying liability in a forum ultimately subject to judicial review. On the other hand, it can be read to include challenges subject to judicial review as well as challenges heard by respondent's Appeals Office

in circumstances where no subsequent prepayment judicial review of the determination is available.  We examine these competing possibilities in turn.

As this Court has often stated, receipt of a notice of deficiency serves as a taxpayer's ticket to the Tax Court.  See, e.g., Manko v. Commissioner, 126 T.C. 195, 200 (2006); Bourekis v. Commissioner, 110 T.C. 20, 26 (1998).  For income, estate, and certain excise taxes, respondent cannot assess a deficiency before first issuing a notice of deficiency.  Sec. 6213(a).[6] Upon receipt, the notice of deficiency entitles a taxpayer to petition this Court to have a Judge, and not the Commissioner, review his or her tax liability de novo prior to the assessment and collection of the tax.  See Manko v. Commissioner, supra. Thus, pursuant to section 6330(c)(2)(B), a taxpayer who actually received a notice of deficiency may not raise the underlying liability again in a collection review proceeding because he has previously litigated the liability, by petitioning this Court, or declined such an opportunity to litigate the liability, by failing to petition this Court.

---

[6]This case does not involve a deficiency determination requiring respondent to issue a notice of deficiency under sec. 6212 on which assessment is restricted by sec. 6213. Accordingly, we do not address the applicability of sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., and the phrase "otherwise have an opportunity" in sec. 6330(c)(2), to situations requiring a notice of deficiency.

A notice of deficiency is not, however, the only ticket to the Tax Court. In other contexts, a taxpayer may enjoy prepayment judicial review of a tax liability without having been issued a notice of deficiency. For instance, with respect to the Commissioner's classification of individuals as employees for purposes of employment taxes, an employer is afforded a process akin to the deficiency procedures.[7] Sec. 7436(d). In these cases, where the Commissioner seeks to reclassify individuals as employees, he may issue a notice of determination with respect to the employment classification to the employer. Sec. 7436(b). This notice of determination entitles a taxpayer to petition this Court for de novo review of the employee classification as well as the proper amount of tax owing from this classification. Sec. 7436(a) and (b). A taxpayer may also seek prepayment review in this Court of a request for an abatement of interest. Sec. 6404(h)(1). A taxpayer might also be afforded prepayment judicial review of a tax liability in a bankruptcy proceeding. 11 U.S.C. sec. 505(a) (2000); see also Sabath v. Commissioner, T.C. Memo. 2005-222.

Thus, it is possible to interpret "otherwise have an opportunity to dispute" to refer to those situations where a taxpayer was afforded one of the other, nondeficiency, avenues for prepayment judicial review. Accordingly, reading section

---

[7] For this purpose, employment taxes are those taxes imposed under subtit. C.

6330(c)(2)(B) as a whole, one might conclude that Congress intended only for taxpayers who previously litigated, or were afforded the opportunity to litigate their tax liabilities, by receipt of a notice of deficiency or otherwise, to be precluded from once again raising the underlying tax liability in a collection review hearing. In other words, by enacting the collection review procedures, Congress intended that every taxpayer have one prepayment opportunity to litigate his tax liability before the Commissioner brings his collection authority to bear.

Such an interpretation finds some support in the legislative history of the Restructuring and Reform Act. Section 6330 originated in section 3401 of the Senate version of H.R. 2676, the bill that, after amendment, was enacted as the Restructuring and Reform Act. The predecessor of section 6330(c)(2)(B) in the Senate version provided without limitation that a taxpayer could raise in a section 6330 proceeding "challenges to the underlying tax liability as to existence or amount." H.R. 2676, sec. 3401(b), 105th Cong., 2d Sess. (1998), 144 Cong. Rec. S4163 (daily ed. May 4, 1998). Judicial review of all collection review determinations, including those regarding the underlying liability, was to be conducted on an abuse of discretion standard. S. Rept. 105-174, at 68 (1998), 1998-3 C.B. 537, 603-604.

The expansive Senate version provoked responses from the Department of the Treasury and other representatives of the executive branch expressing concerns that under the Senate bill a taxpayer could dispute, in a collection review proceeding, tax liabilities that had been previously litigated.  See Statement of Administration Policy, Executive Office of the President (Office of Management and Budget), on H.R. 2676--Internal Revenue Service Restructuring and Reform Act (Reported by the Senate Committee on Finance) (May 5, 1998), reprinted in Tax Notes Today, 98 TNT 87-18 (May 6, 1998); Letter from Robert E. Rubin, Secretary of the Treasury to William Archer, Chairman, Committee on Ways & Means, U.S. House of Representatives (June 2, 1998), reprinted in Tax Notes Today, 98 TNT 112-40 (June 11, 1998).

The final version of the legislation, devised in conference, added the language that a person may challenge the existence or amount of the underlying liability for any tax period "if such person did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability."  While there is nothing explicit in the committee reports to explain the added limitation, it is reasonable to conclude that the conference committee was addressing the stated criticisms of allowing taxpayers multiple opportunities for judicial review of their tax liability.  See Montgomery v. Commissioner, 122 T.C. at 17 (Gale, J.,

concurring).  Thus, it would follow that the language adopted by the conference committee was meant to limit those taxpayers who have previously litigated the underlying liability or declined the opportunity to do so after receiving a notice of deficiency or otherwise.  Of course, if this were Congress's intent, petitioner would not be precluded from raising his liability here because, while he has had the opportunity for an Appeals Office hearing, he has not had a prior opportunity to litigate his underlying tax liability.

This interpretation, however, is not without problems. First, if Congress were concerned only with preventing taxpayers from enjoying multiple opportunities to litigate their tax liability, it certainly did not make this intent clear.  That is, if this were truly the limit of Congress's intent, it could have expressed this by stating in simple terms that a person may challenge the existence or amount of the underlying liability if the person had not previously had the opportunity to seek judicial review of the underlying liability.

To interpret section 6330(c)(2)(B) to mean every taxpayer gets one precollection opportunity to litigate his underlying tax liability would serve to overturn the tax collection scheme as it existed prior to the enactment of the Restructuring and Reform Act where many tax liabilities were not subject to any prepayment judicial review.  For instance, with respect to section 6651,

6654, and 6655 additions to tax which are unrelated to a deficiency, respondent may assess the liability without first issuing a notice of deficiency. Sec. 6665(b); see also sec. 6672(a) (trust fund fraud recovery penalty); sec. 6694 (income tax return preparer penalty); sec. 6205(b) (employment taxes). In each of these contexts there is no prescribed process for prepayment judicial review provided by the Code.[8] Thus, a taxpayer faced with such a liability must first pay the liability, or a divisible portion thereof, before seeking court review in a refund action. See Flora v. United States, 362 U.S. 145 (1960) (recognizing exception to requirement of full payment before refund suit for divisible taxes where taxpayer may pay tax attributable to one event and then file suit for refund); see also sec. 6694(c) (allowing suit for refund of tax return preparer penalty upon payment of 15 percent of the penalty).

Thus, to hold that every taxpayer is entitled to litigate his underlying nondeficiency liability once a collection action is initiated would only encourage a taxpayer to wait until a

---

[8] In the context of abatements of additions to tax, such as those at issue here, prepayment judicial review is restricted by sec. 6404(b), which provides that "No claim for abatement shall be filed by a taxpayer in respect of an assessment of any tax imposed under subtitle A or B." In contrast, where Congress desired to allow prepayment judicial review of interest, it has made this intention clear. Sec. 6404(h) ("The Tax Court shall have jurisdiction over any action brought * * * to determine whether the Secretary's failure to abate interest under this section was an abuse of discretion"); see also Urbano v. Commissioner, 122 T.C. 384, 392-395 (2004).

collection action begins before disputing the liability. Such a concern was raised in Secretary Rubin's letter to Ways and Means Committee Chairman Archer, in which he warned that the expansive Senate bill would "encourage * * * [taxpayers] to ignore their liability until a collection action begins in earnest". Letter from Robert E. Rubin, supra. The regulations do not create such a new remedy for nondeficiency liabilities, and there is nothing in the Code or the legislative history of the Restructuring and Reform Act to suggest that this is unreasonable.

The fact that no prepayment judicial forum is prescribed for certain tax liabilities does not mean that a taxpayer is without a forum to dispute these liabilities. Upon notice and demand for payment of a tax liability, a taxpayer may seek review of the liability by filing a protest with the Commissioner's Appeals Office. Secs. 601.103(c), 601.106, Statement of Procedural Rules. The Appeals Office then provides a taxpayer with an informal conference in which he or she may present evidence and arguments in support of the position disputing the liability. See sec. 601.106(c), Statement of Procedural Rules. The Appeals officer has the "exclusive and final authority" to determine the liability. Sec. 601.106(a)(1), Statement of Procedural Rules. Further, the Appeals procedures provide that the Appeals officer is duty bound "to determine the correct amount of the tax, with strict impartiality between the taxpayer and the Government."

Sec. 601.106(f)(2), Statement of Procedural Rules.  Thus, while not de novo review by a judge, Appeals nonetheless provides a taxpayer with an opportunity to dispute a tax liability.

The importance to Congress of a meaningful Appeals process as part of the overall tax collection scheme is apparent in the Restructuring and Reform Act.  While the opportunity for Appeals consideration has long been part of the Commissioner's collection scheme, it had not previously been mandated by the Code.  The Restructuring and Reform Act sec. 1001, 112 Stat. 689, however, mandates that an independent appeals function exist within the IRS:

> Reorganization of the Internal Revenue Service
>
> (a) In General.--The Commissioner of Internal Revenue shall develop and implement a plan to reorganize the Internal Revenue Service. The plan shall--
>
>     *       *       *       *       *       *       *
>
> (4) ensure an independent appeals function within the Internal Revenue Service, including the prohibition in the plan of ex parte communications between appeals officers and other Internal Revenue Service employees to the extent that such communications appear to compromise the independence of the appeals officers.

Furthering this mandate, Senator Roth, Chairman of the Senate Committee on Finance, explained in his statement introducing the Restructuring and Reform Act for Senate debate:

> One of the major concerns we heard throughout our oversight initiative was that the taxpayers who get caught in the IRS hall of mirrors have no place to turn that is truly independent and structured to represent

> their concerns.  This legislation requires the agency to establish an independent Office of Appeals--one that may not be influenced by tax collection employees or auditors.
>
> Appeals officers will be made available in every state, and they will be better able to work with taxpayers who proceed through the appeals process.

144 Cong. Rec. 14689 (1998) (Statement of Senator Roth).  This suggests that Congress intended the Restructuring and Reform Act to result in an Appeals function that acted as something more than just a rubber stamp for the Commissioner's determinations.

The importance of the Appeals process in resolving disputes is also apparent because Congress, as part of the Restructuring and Reform Act, directed respondent to develop alternative dispute resolution procedures.  Thus, section 7123(b) now mandates:

> SEC. 7123(b).  Alternative Dispute Resolution Procedures.--
>
> (1)  Mediation.-- The Secretary shall prescribe procedures under which a taxpayer or the Internal Revenue Service Office of Appeals may request non-binding mediation on any issue unresolved at the conclusion of--
>
> (A)  appeals procedures; * * *

Respondent has now developed procedures whereby a taxpayer can request mediation of factual and legal issues after settlement discussions with the Appeals Office have proved unsuccessful.  Rev. Proc. 2002-44, 2002-2 C.B. 10; see also Rev. Proc. 2006-44, 2006-44 I.R.B. 800 (establishing arbitration procedures to resolve certain factual disputes).

These provisions of the Restructuring and Reform Act make clear that Congress was concerned with providing taxpayers a meaningful process, short of litigation, in which they could resolve tax disputes with respondent.  Thus, reading section 6330(c)(2)(B) in this context, it is reasonable to conclude that Congress intended not only to address those taxpayers who were previously provided an opportunity to litigate their liability, but also those provided an opportunity to dispute the liability short of litigation.

Ultimately, while it is possible to interpret section 6330(c)(2)(B) to mean that every taxpayer is entitled to one opportunity for a precollection judicial review of an underlying liability, we find it unlikely that this was Congress's intent. As we see it, if Congress had intended to preclude only those taxpayers who previously enjoyed the opportunity for judicial review of the underlying liability from raising the underlying liability again in a collection review proceeding, the statute would have been drafted to clearly so provide.  The fact that Congress chose not to use such explicit language leads us to believe that Congress also intended to preclude taxpayers who were previously afforded a conference with the Appeals Office from raising the underlying liabilities again in a collection review hearing and before this Court.

Thus, in view of the statutory scheme as a whole, as well as the Restructuring and Reform Act specifically, we find respondent's interpretation of section 6330(c)(2)(B) to be reasonable. <u>National Muffler Dealers Association v. United States</u>, 440 U.S. at 476-477. A conference with the Appeals Office provides a taxpayer a meaningful opportunity to dispute an underlying tax liability.[9]

II. <u>Respondent's Motion for Summary Judgment</u>

Summary judgment may be granted where there is no genuine issue of any material fact and a decision may be entered as a matter of law. Rule 121(a) and (b); see <u>Sundstrand Corp. v. Commissioner</u>, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994). The moving party bears the burden of proving that there is no genuine issue of material fact, and factual inferences will be read in the manner most favorable to the party opposing summary judgment. <u>Dahlstrom v. Commissioner</u>, 85 T.C. 812, 821 (1985).

We are satisfied that no genuine issues of material fact exist and judgment as a matter of law is appropriate. Petitioner

---

[9]We reserve judgment today on whether an offer for a conference with Appeals is sufficient (and if so, what information would be required to be included in such an offer) to preclude subsequent collection review consideration if the taxpayer declines the offer without participating in such a conference. We note, however, that we read sec. 6330(c)(2)(B) to allow a taxpayer who has had neither a conference with Appeals nor an opportunity for a conference with Appeals to raise the underlying liability in a collection review proceeding before Appeals <u>and</u> this Court.

filed his 2002 income tax return on January 25, 2004, and included payment for the reported tax due of $11,636. Respondent then assessed additions to tax of $2,618.10 and $581.80 pursuant to section 6651(a)(1) and (2). Petitioner submitted a request for abatement of the assessed additions to tax. This request was referred to respondent's Appeals Office. The Appeals officer then considered the circumstances of petitioner's late filing, including correspondence submitted on petitioner's behalf explaining that petitioner's accountant, who possessed petitioner's tax records, was hospitalized with stomach cancer until shortly before petitioner's 2002 tax return was filed. The Appeals officer then determined that reasonable cause to abate the additions to tax was not present.

Accordingly, because petitioner had an opportunity, and availed himself of that opportunity, to dispute the underlying tax liability in a conference with the Appeals Office, he may not raise that underlying liability again in a collection review hearing or before this Court. Sec. 6330(c)(2)(B); sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

Petitioner has not raised any issues, other than the underlying liability, in opposition to respondent's proposed

collection action in his petition.  Therefore, for the reasons stated, we shall grant respondent's motion for summary judgment.

To reflect the foregoing,

An appropriate order and decision will be entered for respondent.