T.C. Memo. 2016-230

UNITED STATES TAX COURT

SARA ARCHER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

ROBERT ARCHER, Petitioner v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 6033-15L, 6034-15L.[1]        Filed December 19, 2016.

John K. Walsh, Jr., for petitioners.

Robert W. Mopsick and Joan Casali, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

JACOBS, Judge:  These consolidated cases were commenced in response to

Notices of Determination Concerning Collection Action(s) Under Section 6320

--------

[1]These cases were consolidated for purposes of trial, briefing, and opinion by order of the Court dated June 8, 2016.

**[*2]** and 6330 (notice of determination) sustaining respondent's (Internal Revenue Service or IRS) final notice of intent to levy to collect unpaid section 4958 excise taxes and additions to tax from Sara Archer and Robert Archer (collectively Archers), husband and wife.  At all relevant times the Archers owned, controlled and operated Sara's Pre-School, Inc. (Pre-School).  The IRS determined that in 2008 and 2009 Pre-School engaged in transactions (payment of excess compensation to the Archers) that constituted "excess benefit transactions" under section 4958, subjecting each of the Archers to an excise tax.  As a consequence, the IRS determined deficiencies and additions to tax against Mrs. Archer, as follows:

|  | Excise tax | Additions to tax | |
| --- | --- | --- | --- |
| Year | sec. 4958 | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| 2008 | $364,216 | $81,949 | $85,591 |
| 2009 | 378,749 | 69,566 | 69,566 |

The IRS also determined deficiencies and additions to tax against Mr. Archer, as follows:

|  | Excise tax | Additions to tax | |
| --- | --- | --- | --- |
| Year | sec. 4958 | Sec. 6651(a)(1) | Sec. 6651(a)(2) |
| 2008 | $270,079 | $60,768 | $63,469 |
| 2009 | 364,216 | 81,949 | 85,591 |

**[*3]** The issues involved are (1) whether the IRS timely mailed valid notices of deficiency for 2008 and 2009 to the Archers, and if so (2) whether the IRS' determination to collect unpaid assessments against the Archers by way of levy may proceed.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times. All dollar amounts have been rounded to the nearest dollar.

FINDINGS OF FACT

Pre-School is a tax-exempt organization as described in section 501(c)(3).[2] Pre-School's exempt purpose, as stated on its Form 990, Return of Organization Exempt From Income Tax, is to provide "pre-school care for infants and toddlers and Nursery School". Mrs. Archer is the president of Pre-School; she has held that office since Pre-School obtained tax exemption under section 501(c)(3) in 1986. Mr. Archer is the secretary of Pre-School; he maintains Pre-School's facilities day to day. Pre-School's tax year runs from July 1 to June 30 of the subsequent calendar year.

---

[2]Pre-School is an educationally based center which focuses on preparing children for kindergarten and public school entrance. It operates out of a church building Monday through Friday from 7 a.m. to 6:30 p.m. Pre-School is State accredited, offering infant care programs for infants 6 weeks to 18 months and toddler classes for children 18 months to 3 years of age.

**[*4]**   In March 2011 Revenue Agent Sunny Shah was assigned the task of determining Pre-School's eligibility to remain a tax-exempt organization.  On March 18, 2011, he contacted Pre-School with respect to the Form 990 it had filed for its tax year ended June 30, 2009.  Specifically, Revenue Agent Shah was concerned that Pre-School lacked appropriate oversight, a lack which, in turn, created governance problems.  Pre-School engaged John K. Walsh, Jr., to represent it in this matter.

Initially, Revenue Agent Shah's examination consisted of information document requests which he sent to Pre-School (an office correspondence case).  When Pre-School failed to respond to Revenue Agent Shah's requests for information documents, the tax examination was changed from an office correspondence case to a field examination.  At this point Revenue Agent Shah was reassigned, and on November 11, 2011, Revenue Agent Kevin Morgan assumed responsibility for the tax examination.  On March 19, 2012, Revenue Agent Denise Gonzalez was assigned to assist Revenue Agent Morgan.  On July 16, 2012, it was decided that the two revenue agents would split responsibilities: Revenue Agent Morgan would focus on the examination of Pre-School's tax-exempt status and its filing of Form 990; Revenue Agent Gonzalez would focus on the amount of compensation Pre-School paid to Mr. and Mrs. Archer.  The

[*5] revenue agents informed the Archers that the period of limitations on assessment and collection of tax was due to expire on November 15, 2012; consequently the agents emphasized that the Archers needed to respond promptly to their inquiries. But the Archers delayed in responding to the revenue agents' requests.

Revenue Agent Morgan ultimately determined that no additional IRS action was required after the Archers agreed to implement a series of internal control improvements. However, Revenue Agent Gonzalez determined that both Mr. and Mrs. Archer received "excess compensation" from Pre-School. On October 4, 2012, Revenue Agent Gonzalez sent Mrs. Archer a Letter 3614, commonly known as a 30-day letter, with an accompanying revenue agent's report, proposing the imposition of an excise tax pursuant to section 4958. Revenue Agent Gonzales determined that the excess compensation paid by Pre-School to Mrs. Archer constituted an "excess benefit transaction"[3] described in section 4958(c)(1)(A) which (1) resulted in Mrs. Archer's being subject to an excise tax on the excess benefit transaction and (2) required correction. The 30-day letter informed Mrs.

---

[3]An "excess benefit transaction" is a transaction in which an economic benefit is provided by the applicable tax-exempt organization directly or indirectly to or for the use of a disqualified person if the value of the economic benefit provided exceeds the value of the consideration (including the performance of services) received for providing such benefits.

[*6] Archer that she could file a protest with the IRS Office of Appeals by November 4, 2012, contesting the proposed adjustment. The 30-day letter included a Form 872, Consent to Extend the Time to Assess Tax, which extended the soon-expiring period of limitations. An October 19, 2012, date was given for returning a signed Form 872 to the IRS. The 30-day letter stated that the IRS would issue a statutory notice of deficiency if a timely response was not received. Revenue Agent Gonzalez sent Mr. Archer a virtually identical 30-day letter, also on October 4, 2012.

The Archers each acknowledged receipt of the 30-day letter. They decided not to agree to extend the period of limitations or respond to the 30-day letter but rather to challenge in this Court the IRS' determination regarding the imposition of the excise tax.

After the time to respond to the 30-day letters had expired, Revenue Agent Gonzalez prepared notices of deficiency. She addressed the notices to each of the Archers, not to Mr. Walsh, because she had not received Forms 2848, Power of Attorney and Declaration of Representative, from the Archers indicating that Mr. Walsh could represent them. The address for both notices of deficiency was the

**[*7]** same as that to which the 30-day letters were sent.[4]  Upon completing the notices of deficiency, Revenue Agent Gonzales emailed the proposed notices to her manager, Tony Pinto, who on November 8, 2012, forwarded the two notices to Revenue Agent Kimberly Harrell, a supervisor in the exempt organizations mandatory review section (mandatory review).  The primary responsibilities of mandatory review included supervising the issuance of final letters, such as final adverse determination letters and notices of deficiency, and ensuring sufficient time remained for the IRS Office of Appeals to review the case.

Upon receiving the email from Mr. Pinto, on November 9, 2012, Revenue Agent Harrell reviewed each notice of deficiency.  They were each dated November 9, 2012, and reflected that the last day to file a petition in the Tax Court was February 7, 2013.  Revenue Agent Harrell prepared the envelopes for the two notices of deficiency; she placed the notices in their respective envelopes and prepared Postal Service Form 3800, U.S. Postal Service Certified Mail Receipt, for each.  The certified mail article number for Mrs. Archer's document was 7010 3090 0002 4927 6143.  The certified mail article number for Mr. Archer's document was 7010 3090 0002 4927 6136.  Revenue Agent Harrell completed a

---

[4]Mr. and Mrs. Archer each testified that he/she, as well as Pre-School, received mail from the IRS at the address to which the 30-day letters and notices of deficiency were sent.

**[*8]** PS Form 3877 certified mailing list for each notice of deficiency. PS Form 3877, in essence, is a log used to record the name, address, and article number for each envelope mailed via certified mail. Revenue Agent Harrell sealed each envelope and prepared and attached a certified mail return receipt to each envelope. She took the two sealed envelopes to the mailroom and handed them to the mailroom clerk. The envelopes were delivered to the mailroom on November 9, 2012, before the cutoff time of 3:30 p.m., thus ensuring that the two notices of deficiency would be mailed that day. Revenue Agent Harrell was aware that the period of limitations would expire on November 15, 2012.

Both notices of deficiency were mailed on November 9, 2012; each Postal Service Form 3800 bore a postmark with that date. The certified mail return receipt for Mrs. Archer was returned to the IRS bearing the signature of Mrs. Archer and a delivery date of November 14, 2012. The certified mail return receipt for Mr. Archer was never returned to the IRS. However, a printout of the track-and-confirm feature of USPS.com shows that article No. 70103090000249276136 (i.e., Mr. Archer's notice of deficiency) was delivered to his address at 9:43 a.m. on November 14, 2012.[5]

_____

[5]With respect to Mrs. Archer's notice of deficiency, respondent's counsel provided the Court with a printout of the track-and-confirm feature of USPS.com.
(continued...)

**[*9]**   The Archers did not petition the Court for redetermination of the IRS determinations as set forth in the notices of deficiency.  On April 2, 2013, the IRS assessed the excise tax and additions to tax.  On August 22, 2013, the IRS sent both Mr. and Mrs. Archer a Final Notice--Notice of Intent to Levy and Notice of Your Right to a Hearing, advising them that it intended to use levy action to collect their unpaid tax liabilities.  That notice offered them an opportunity for a hearing with the IRS Office of Appeals.  On September 19, 2013, the Archers timely filed respective Forms 12153, Request for a Collection Due Process or Equivalent Hearing (section 6330 hearing).  On each Form 12153, the Archers asserted that they had never received notices of deficiency and consequently had never had an opportunity to challenge the asserted liabilities.  The Archers requested a collection alternative, claiming that they could not pay the balances due.  The request for the section 6330 hearing was assigned to Settlement Officer Stephen McCarrick on December 5, 2013.  On January 8, 2014, Settlement Officer McCarrick prepared and mailed to the Archers a letter scheduling a telephone section 6330 hearing on February 19, 2014.  The letter requested the Archers to complete and return Form 433-A, Collection Information Statement for Wage

---

[5](...continued)
The printout states that article No. 70103090000249276143 was delivered to petitioners' address at 9:43 a.m. on November 14, 2012.

[*10] Earners and Self-Employed Individuals, a copy of which was enclosed, together with copies of their last four months' bank statements and copies of their most current retirement account statements.

The section 6330 hearing was held as scheduled on February 19, 2014. The Archers did not raise any collection alternatives, and they failed to provide the financial information requested by Settlement Officer McCarrick. Settlement Officer McCarrick gave the Archers' attorney, Mr. Walsh, a deadline of February 26, 2014, to provide the requested financial information. Neither Mr. Walsh nor the Archers provided the requested information. The balance of the section 6330 hearing involved the Archers' challenging the underlying deficiency. The Archers asserted that because no notices of deficiency had been sent to them, the period of limitations had expired. After the hearing, Settlement Officer McCarrick attempted to retrieve the notices of deficiency. After numerous attempts to secure the notices of deficiency failed, on August 26, 2014, Settlement Officer McCarrick was instructed by IRS Appeals Team Manager Darryl Lee to consider the Archers' situation in the light of the amount of time expended in attempting to recover the notices of deficiency. On January 12, 2015, the notices of deficiency were found. The IRS supplied the Archers, through Mr. Walsh, with copies of their respective

[*11] notices of deficiency, and they were advised that they could not challenge their tax liabilities because they had failed to timely petition the Tax Court.

The IRS issued the Archers notices of determination on February 10, 2015, sustaining the proposed levies. In the notices of determination, the IRS determined that (1) the Archers had received their respective statutory notices of deficiency and consequently had had a prior opportunity to challenge their liabilities, and (2) because the Archers did not provide financial information necessary to determine their ability to pay their tax liabilities, collection alternatives were not considered. Thereafter, the Archers timely filed a petition in this Court challenging the IRS' determination to collect the unpaid section 4958 excise taxes and additions to tax by way of levy. At the time they filed their petitions, the Archers resided in New Jersey.

## OPINION

Under section 6331(a), the Secretary may levy upon a taxpayer's property and rights to property if the taxpayer fails to pay a tax within 10 days after notice and demand for payment. Section 6330(a) provides that no levy may be made on any property or rights to property of any person unless the Secretary notifies such person in writing of the right to a hearing before the levy is made. Section 6330(a) and (b) and section 6331(d) provide that: (1) the Secretary must give the taxpayer

**[*12]** at least 30 days' written notice of his intent to levy and (2) at least 30 days before any levy begins, the Secretary is required to send the taxpayer written notice of the taxpayer's right to a hearing before the IRS Office of Appeals.

If the taxpayer requests a hearing (i.e., the section 6330 hearing), the taxpayer may raise any relevant issue relating to the unpaid tax or the proposed levy, including spousal defenses, challenges to the appropriateness of the collection action, and offers of collection alternatives. Sec. 6330(c)(2)(A). A taxpayer may challenge the existence or amount of the underlying tax liability if he/she did not receive a notice of deficiency or otherwise have a prior opportunity to dispute the tax liability. Sec. 6330(c)(2)(B); sec. 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs.

After the IRS issues a notice of determination, a taxpayer may petition this Court for review thereof. Sec. 6330(d)(1). The Court's review of the IRS' determination is subject to the provisions of section 6330. Where the amount of a taxpayer's underlying tax liability is properly at issue, the Court reviews the IRS' determination de novo. See Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). The Court reviews the IRS' determinations regarding nonliability issues for abuse of discretion. Hoyle v. Commissioner, 131 T.C. 197, 200 (2008); Goza v. Commissioner, 114 T.C. at 182.

[*13] Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. See Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006).

The Archers' sole argument is that the IRS failed to properly issue notices of deficiency. With respect to Mrs. Archer, respondent's counsel presented the certified mail return receipt bearing her signature and a delivery date of November 14, 2012. At trial, petitioners asserted that the signature was not that of Mrs. Archer, but petitioners did not provide any evidence to support this contention. We find that Mrs. Archer received the notice of deficiency and hence she may not challenge the underlying liability.

With respect to Mr. Archer, "[t]here is a strong presumption in the law that a properly addressed letter will be delivered, or offered for delivery, to the addressee." See Zenco Eng'g Corp. v. Commissioner, 75 T.C. 318, 323 (1980), aff'd without published opinion, 673 F.2d 1332 (7th Cir. 1981); see also Sego v. Commissioner, 114 T.C. at 611 ("In the absence of clear evidence to the contrary, the presumptions of official regularity and of delivery justify the conclusion that the statutory notice was sent and that attempts to deliver were made in the manner contended by respondent."). Proper mailing of the notice of deficiency places the risk of nondelivery on the taxpayer. Bailey v. Commissioner, T.C. Memo. 2005-

[*14] 241; Figler v. Commissioner, T.C. Memo. 2005-230; Barrash v.
Commissioner, T.C. Memo. 1987-592, aff'd without published opinion, 862 F.2d
872 (5th Cir. 1988).

Petitioners challenged the proper mailing of Mr. Archer's notice of
deficiency. The IRS refuted petitioners' challenge by showing the preparation,
review, and mailing of the two notices of deficiency. And we are mindful that
post office records reveal that the delivery of the envelope addressed to Mr.
Archer occurred at 9:43 a.m. on November 14, 2012. Petitioners' attorney, Mr.
Walsh, questioned the IRS employees and the post office employee who testified
with regard to the preparation, review, and mailing of the notices of deficiency.

In sum, we are satisfied that Mr. Archer's notice of deficiency was properly
mailed, and delivered, to him at his home address. We thus hold that petitioners
received their respective notices of deficiency and had a prior opportunity to
contest their underlying tax liabilities.

As petitioners have not raised any argument with respect to collection
alternatives and since they failed to provide Settlement Officer McCarrick with the
financial information he requested, our only remaining duty in this matter is to
determine whether as required by section 6330(c)(1) and (3), the settlement officer
verified that the requirements of applicable law and administrative procedure were

**[*15]** met and considered whether the proposed collection action balanced the need for the efficient collection of taxes with the legitimate concern of petitioners that the collection action be no more intrusive than necessary. In the notice of determination, Settlement Officer McCarrick stated he had verified that the requirements of all applicable law and administrative procedure were met and that he determined that the levy appropriately balanced the need for efficient collection of taxes with petitioners' concern that the collection action be no more intrusive than necessary. We have no reason to doubt the truthfulness of these statements. In sum, we are satisfied that all mandates of section 6330(c)(1) and (3) have been met and that Settlement Officer McCarrick properly sustained the imposition of the proposed levy against petitioners' property.

In reaching our holding, we have considered all of petitioners' arguments that are not discussed herein, and we conclude they are without merit, irrelevant, and/or moot. To reflect the foregoing,

<u>Decisions will be entered</u>

<u>for respondent</u>.