154 T.C. No. 7

UNITED STATES TAX COURT

JOSEPH THOMAS LANDER AND KIMBERLY W. LANDER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 25751-15L.                       Filed March 12, 2020.

Ps seek relief from the filing of a notice of Federal tax lien.
They maintain that the assessment of the underlying income tax
liability for 2005 was invalid and that they did not have an
opportunity to challenge the underlying tax liability before the
hearing on the tax lien filing as described in I.R.C. sec.
6330(c)(2)(B).

Ps cannot challenge the underlying liability in a collection due
process proceeding if they had a prior opportunity to dispute the tax
liability. See I.R.C. sec. 6330(c)(2)(B). In Lewis v. Commissioner,
128 T.C. 48 (2007), we applied secs. 301.6320-1(e)(3), Q&A-E2, and
301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., and held that a
conference with IRS Appeals after assessment of a tax liability which
was not subject to deficiency procedures was such a prior
opportunity. In Lewis v. Commissioner, 128 T.C. at 55 n.6, we
declined to rule on the applicability of the prior opportunity question
in cases requiring a notice of deficiency. Unlike in Lewis, Ps'
liability is in income tax and they did not receive the notice of

deficiency. However, the notice was sent to the last address shown on their income tax returns. Subsequently, Ps filed a delinquent income tax return and an amended income tax return for 2005, and those returns were audited. Ps were then offered administrative review in Appeals, which they accepted. The Appeals officer relieved Ps of some of the income tax liability.

Held: Ps had a prior opportunity to dispute the joint income tax liability for 2005, and the liability cannot be challenged in this case.

Held, further, the assessment of the 2005 income tax liability is valid.

Frank M. Smith, for petitioners.

Jamie A. Schindler, for respondent.

OPINION

GOEKE, Judge: This case was assigned to and trial was conducted by Special Trial Judge Guy pursuant to section 7443A(b)(4)[1] and Rules 182(e) and 183. His recommended findings of fact and conclusions of law were filed and

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code (Code) as amended and in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.

served on the parties. Both parties filed responses, and respondent also filed a reply to petitioners' response.

We are mindful in reviewing Special Trial Judge Guy's recommended findings of fact that Rule 183(d) provides that we shall give due regard to the circumstance that the Special Trial Judge had the opportunity to evaluate the credibility of witnesses and shall presume the findings of fact recommended by the Special Trial Judge to be correct.

We have reviewed the recommended findings of fact and conclusions of law of Special Trial Judge Guy and the subsequent submissions by the parties pursuant to section 7443A(b)(4) and Rules 182(e) and 183.

We adopt Special Trial Judge Guy's recommended findings of fact and conclusions of law, which are shown below, as the Opinion of the Court.

## Background

This case is an appeal from a notice of determination issued by the Internal Revenue Service (IRS) Office of Appeals (Appeals Office) sustaining the filing of a Federal tax lien related to petitioners' unpaid Federal income tax for the taxable year 2005. The issues for decision are (1) whether assessments that respondent entered against petitioners for the taxable year 2005 are valid and, if so,

(2) whether the Appeals Office erred in determining that petitioners are barred from challenging their underlying tax liability pursuant to section 6330(c)(2)(B).

The parties have stipulated some facts. Petitioners, husband and wife, resided in Florida when the petition was filed.

## I. Petitioners' 2005 Tax Return

On April 2, 2009, petitioners filed a delinquent joint Federal income tax return for the taxable year 2005 (sometimes referred to as the year in issue). In September 2009, shortly after the IRS had opened an examination of the tax return, petitioners filed an amended tax return. The parties agree that the address that petitioners entered on their original and amended tax returns, P.O. Box 2007, Cross City, Florida (Cross City address), was their last known address at all times pertinent to this case.

## II. Mr. Lander's Criminal Case

In 2009 Mr. Lander, an attorney, was convicted by a jury in the U.S. District Court for the Northern District of Florida on mail fraud and money laundering charges, and he was sentenced to a term of incarceration beginning February 10, 2010. While Mr. Lander was incarcerated, Mrs. Lander acted as his attorney-in-fact pursuant to a general durable power of attorney that he had executed in November 2008.

The U.S. Court of Appeals for the Eleventh Circuit subsequently reversed Mr. Lander's convictions on 12 counts (mail fraud and money laundering charges related to a real estate development transaction) but sustained his convictions on 4 counts (mail fraud related to misrepresentations that he made to investors in GenSpec, LLC (GenSpec), a company that he had organized). See United States v. Lander, 668 F.3d 1289 (11th Cir. 2012).

III. Initial Examination

Revenue Agent Cassandra Sports (RA Sports), assigned to the IRS examination unit in Gainesville, Florida (Gainesville examination unit), examined petitioners' 2005 tax return. On July 29, 2011, the IRS sent petitioners a so-called 30-day letter outlining proposed adjustments to their tax liability for 2005 including, in relevant part, the disallowance of a deduction for a flowthrough loss of $174,588 attributable to GenSpec (GenSpec loss) and an adjustment to income (i.e., an unreported capital gain) attributable to cash distributions that petitioners had received from K3 Ventures, LLC (K3 Ventures capital gain).[2]

---

[2]Petitioners' amended return for the year in issue stated in pertinent part: "Amended return * * * due to correction to K3 Ventures. Original return had K3 Ventures as Schedule C but company was a 2-person LLC and a 1065 has been prepared for 2005."

RA Sports summarized the K3 Ventures capital gain adjustment as follows:

The taxpayers apparently created an entity in 2005 which they named K3 Ventures. The nature of the activity and/or the business purpose of the entity are unknown. Although the entity was a two-member LLC, it was originally reported as a Schedule C activity on the first Form 1040 filed for 2005. On the 09/29/2009 Form 1040X, the activity was included on Sch E as a flow-through entity. Also, F1065 was filed for the activity which was consistent with the 1040X assertions.

The K-1 information provided with the 1040X indicated the taxpayers each contributed $208,010 ($416,020 total) and each received a cash distribution of $202,394 ($404,787 total.) Based on the taxpayers' reported sources of income and other return information there were no sources which could explain the access to over $400,000 to contribute to K3 Ventures, LLC.

\*        \*        \*        \*        \*        \*        \*

The taxpayers have failed to report and/or disclose any sources of taxable or non-taxable income to support the 2005, initial capital contribution to K3 Ventures LLC. Absent this documentation and substantiation of any amount of capital contributed, IRC [section] 731(b) provides that the recognized gain shall be treated as a gain from the sale of the partnership interest. Since this is the first year of operation, the taxpayers' gain will be treated as a short-term capital gain.

On August 26, 2011, Mrs. Lander submitted to the Gainesville examination unit a package titled "FORMAL PROTEST" in response to the 30-day letter. The package comprised various records, including an October 2005 bank statement listing deposits/credits and withdrawal/debits to an account that K3 Ventures

maintained at Drummond Community Bank. The package included a typewritten note signed by Mr. Lander, dated August 22, 2011, stating: "If you have any further questions or if we can provide any additional information to you pursuant to this communication, please contact Joseph Lander at: * * * P.O. Box 1000, Morgantown, WV 26507." The address is that of the Federal correctional institution where Mr. Lander was incarcerated at that time and will be referred to as the FCI Morgantown address.

The IRS did not treat Mrs. Lander's August 26, 2011, package as a proper protest of the 30-day letter. Because petitioners had not agreed to extend the period of limitations governing assessment for the year in issue, their administrative file was forwarded to the IRS Technical Services Office in Jacksonville, Florida (Jacksonville technical services office), for the preparation and issuance of a statutory notice of deficiency.

IV. Notice of Deficiency

Corey Campbell, group manager at the Jacksonville technical services office in 2011, testified at trial. Mr. Campbell reviewed the documents in petitioners' administrative file, summarized routine IRS practices and procedures concerning the preparation and mailing of notices of deficiency, and described the various

actions taken by IRS personnel who worked under his supervision as outlined below.

Revenue Agent Bonnie McElhattan (RA McElhattan), assigned to the Jacksonville technical services office, prepared a joint notice of deficiency determining that petitioners were liable for an income tax deficiency of $148,708 for the taxable year 2005, an addition to tax of $37,177 under section 6651(a)(1) for failure to timely file a tax return, and an accuracy-related penalty of $29,742 under section 6662(a). In preparing the notice of deficiency RA McElhattan relied on information in petitioners' administrative file, including the 30-day letter. The income tax deficiency was largely attributable to two adjustments: (1) the disallowance of a deduction for the GenSpec loss and (2) the K3 Ventures capital gain.

After RA McElhattan had prepared the notice of deficiency, petitioners' administrative file was forwarded to Tax Examiner Harvey McGhee (TE McGhee), also employed at the Jacksonville technical services office, who was responsible for mailing duplicate copies of the joint notice of deficiency to petitioners by certified mail. In doing so TE McGhee first printed two or more duplicate "blank" copies of the notice of deficiency (i.e., at least two copies each of the notice of deficiency, one of which was addressed to the Cross City address

and the other to the FCI Morgantown address).  In both cases the notice of deficiency was addressed to "Joseph T. & Kimberly W. Lander".  The copies were blank in the sense that they had not been stamped with the date of mailing or the last date for filing a timely petition for redetermination with the Court.

Before mailing the notice of deficiency, TE McGhee stamped the date of mailing, November 16, 2011, and the last date to file a timely petition for redetermination, February 14, 2012, on the first page of the notice of deficiency that would be mailed to petitioners.  He then placed those same stamps on what would become IRS file copies of the notice of deficiency.  Because the date stamps were placed on the file copies, independent of the date stamps placed on the notice of deficiency mailed to petitioners, the file copies are not true duplicates of the notice of deficiency.

After placing the date stamps on the notice of deficiency, TE McGhee prepared a U.S. Postal Service (USPS) Form 3877, Certified Mail List, which shows that the joint notice of deficiency was mailed to petitioners at (1) the Cross City address (assigned certified mail No. 7010 0290 0002 4450 1988) and (2) the FCI Morgantown address (assigned certified mail No. 7010 0290 0002 4450 1995).  The Form 3877 bears the initials of TE McGhee, initials in a space designated for the USPS Postmaster, and a USPS postmark date of November 16,

2011. The Form 3877 indicates that the IRS presented, and the USPS acknowledged receipt of, seven items of mail bearing specific certified mail numbers.

USPS certified mail packages include a sticker bearing the certified mail number unique to each package that the sender can retain for recordkeeping purposes. It is the routine practice of the IRS to place the certified mail number sticker on the top of the first page of a file copy of a notice of deficiency or to write the number on the top of the file copy in the event that the sticker is inadvertently damaged or is otherwise unusable.

Petitioners' administrative file includes a file copy of the notice of deficiency mailed to the FCI Morgantown address that bears the date stamps referred to above, as well as a certified mail sticker bearing No. 7010 0290 0002 4450 1988. The letter "W" is handwritten on the sticker, which Mr. Campbell surmised was a shorthand reference to "wife" or Mrs. Lander. Petitioners' administrative file likewise includes a file copy of the notice of deficiency mailed to the Cross City address that bears the date stamps referred to above, as well as handwritten certified mail No. 7010 0290 0002 4450 1995. Noting the discrepancy between the certified mail numbers placed on the file copies of the notice of deficiency and the certified mail numbers assigned to the notice of

deficiency as recorded on Form 3877, Mr. Campbell speculated that TE McGhee had inadvertently switched the certified mail numbers in the process of completing his work on the file copies of the notice of deficiency.

A.  The Cross City Notice

USPS.com track and confirm records show that the item of certified mail bearing No. 7010 0290 0002 4450 1988 first entered the USPS delivery system at Jacksonville, Florida, on November 16, 2011; it promptly arrived at the USPS unit in Cross City, Florida; the USPS left notice that the item was available for pickup on November 17, 2011; and the USPS treated the item as having been unclaimed on December 6, 2011.

The USPS returned the envelope bearing the Cross City notice of deficiency to the IRS.  After the Cross City notice of deficiency was returned, IRS personnel opened the envelope, removed the notice of deficiency, and stapled it to the envelope.[3]  Consistent with normal practice, the IRS retained the envelope and the notice of deficiency in petitioners' administrative file.

Although they are partially obscured, the envelope bears USPS postage of at least $4.30 and a postmark date of November 16.  The face of the envelope

---

[3]Respondent produced the original envelope and the notice of deficiency mailed to the Cross City address at trial, and petitioners' counsel inspected the documents.

includes handwritten dates as follows: "11-17-11", "11-25", and "12-2-11", evidently marking the dates that the USPS left notice for petitioners that an item of certified mail was available for pickup. The face of the envelope is marked "RETURN TO SENDER UNCLAIMED".

B. The FCI Morgantown Notice

USPS.com track and confirm records show that the item of certified mail bearing No. 7010 0290 0002 4450 1995 first entered the USPS delivery system on November 16, 2011; it arrived at the USPS unit in Morgantown, West Virginia, on November 22, 2011; and it was delivered that same day. In the meantime, however, Mr. Lander had been discharged from FCI Morgantown on November 17, 2011, and he spent that day in transit to another Federal prison facility in Pensacola, Florida, where he continued his term of incarceration later that day.

Respondent acknowledges that petitioners did not receive either copy of the notice of deficiency. Consequently, they did not have the opportunity to file a petition for redetermination with the Court challenging the notice of deficiency.[4]

---

[4]It is worth noting that on March 23, 2012, respondent issued to petitioners a joint notice of deficiency for the taxable years 2006, 2007, and 2008. On June 20, 2012, petitioners filed a timely petition for redetermination with the Court assigned docket No. 15807-12. The parties arrived at a basis for settlement, and the Court entered a stipulated decision in that case on May 21, 2013.

## V.  Assessment and Initial Collection Activity

On July 2, 2012, the IRS entered assessments against petitioners for the tax, addition to tax, and accuracy-related penalty determined in the notice of deficiency for the taxable year 2005, and interest related thereto.  On that same date the IRS sent to petitioners a notice and demand for payment of $295,691--the balance due on their account for the taxable year 2005.  Petitioners did not remit payment.

On July 23, 2012, the IRS sent to petitioners a CP504, Notice of Intent to Levy, for 2005.[5]  On July 26, 2012, petitioners sent a letter to the IRS Taxpayer Advocate Service (TAS) stating that, although they had never received a notice of deficiency for 2005, nor any response to their protest to the 30-day letter, the IRS had initiated collection activities for that year.  In April 2013 the TAS sent an Operations Assistance Request memorandum to the IRS Examination Division recommending a reexamination of petitioners' 2005 tax return.

## VI.  Audit Reconsideration

On June 5, 2013, a supervisor at the Gainesville examination unit sent a letter to petitioners stating that their August 26, 2011, letter did not qualify as a formal protest under the Internal Revenue Manual.  The letter (which effectively

---

[5]This notice did not state that petitioners could request a collection due process hearing with the Appeals Office.

started the audit reconsideration process) was accompanied by an IRS rebuttal to petitioners' August 26, 2011, letter, invited them to submit a proper formal protest, and identified Revenue Agent Femi Ayadi (RA Ayadi) as the person to contact.

On July 1, 2013, petitioners forwarded to the IRS a protest and response to the IRS rebuttal. Petitioners asserted that the period of limitations governing assessment for 2005 had expired because the IRS had never issued a notice of deficiency to them. To varying degrees petitioners also addressed the merits of the adjustments related to the GenSpec loss and the K3 Ventures capital gain. With regard to the K3 Ventures capital gain, petitioners stated in relevant part:

> Upon creation of the PARTNERSHIP * * * taxpayers made a tax free contribution into the entity. The source of those funds were from external resources with personal liability attached via personal guarantee(s) or securitization with other property. * * * Even if the funding came from a third party directly into the K-3 Ventures, LLC operating account(s), the spirit and intent - as well as contractual obligations (written or oral) - carry the day and are in accordance with IRC Sec 731(a)(1) and consistent with how taxpayer(s) reported the transactions(s).

Petitioners closed their letter with a request for Appeals Office review.

On July 10, 2013, petitioners submitted an amendment to their protest providing additional argument related to the K3 Ventures capital gain. Petitioners asserted that they had previously provided Drummond Community Bank records

showing "deposits in excess of $415,000 * * * [in October 2015] credited to the taxpayer(s) respective capital account(s)".

On July 15, 2013, RA Ayadi sent a letter to petitioners responding to their July 1, 2013, protest. Acknowledging that petitioners had requested Appeals Office review, RA Ayadi provided a rebuttal to their protest and, citing the requirements of section 6001, noted that they had not provided any documents or records to substantiate the source of the funds that they purportedly contributed to K3 Ventures. In response to petitioners' claim that the IRS had failed to deliver a notice of deficiency to them for the taxable year 2005, RA Ayadi stated: "This has no bearing on the outcome of the audit findings. The Notice of Deficiency was not sent by the Revenue Agent that was previously working the case."

VII. Appeals Office Review

Petitioners' case was subsequently transferred to the Appeals Office in Tampa, Florida, and assigned to Appeals Officer Thomas Bohné (AO Bohné). About this same time, on September 17, 2013, Mr. Lander was released from prison.

On December 23, 2013, AO Bohné met with petitioners, and they renewed the argument that the underlying assessments for 2005 were invalid because the IRS had not issued a notice of deficiency to them.

By letter dated January 7, 2014, AO Bohné informed petitioners that a notice of deficiency for 2005 had been "delivered to the Morgantown WV and the Cross City FL addresses and were subsequently unclaimed." He also invited petitioners to meet with him if they wanted to continue the audit reconsideration process.

On January 21, 2014, petitioners sent a letter to AO Bohné challenging his conclusion that a notice of deficiency had previously been mailed to them, citing various factors, including the discrepancies between the certified mail numbers appearing on IRS file copies of the notice of deficiency and USPS.com track and confirm records. On February 3, 2014, AO Bohné wrote to petitioners and reiterated that, although he disagreed with their assertion that the period of limitations governing assessment had expired, he would continue to work with them to arrive at a basis for settlement taking into account the hazards of litigation confronting both parties.

On March 10, 2014, petitioners met with AO Bohné a second time. On March 24, 2014, they sent a letter to AO Bohné enclosing a portion of the transcript from Mr. Lander's criminal resentencing hearing held in August 2012. The partial transcript was limited to the direct testimony of a witness that Mr.

Lander had called to testify about petitioners' interests in GenSpec and K3 Ventures.

On May 9, 2014, AO Bohné sent a letter to petitioners stating in relevant part:

> Your case was received in Appeals as a result of the Taxpayer Advocate requesting a [sic] Audit Reconsideration of the original audit. * * *
>
> As the result of the agreement reached for the subsequent years of 2006 through 2008 the GenSpec flow thru loss of $174,588 and IRC [section] 6662 Accuracy Penalty were abated. Nothing could be done with the Capital Gains adjustment of $397,937.
>
> Your contention was that there were adequate deposits made into the K-3 bank account in 2005 to cover the distributions and you are correct. However none of these monies were taxed to you, and hence could not provide you any basis. If the monies had not been classified as capital gains they would have had to be classified as unreported income and possibly be taxed at a greater rate.
>
> If you have any questions, please call me at the above phone number.

AO Bohné's letter was accompanied by an Appeals Case Memorandum which provided a detailed explanation of the adjustments to petitioners' tax liability for 2005. With regard to the K3 Ventures capital gain, AO Bohné noted that a Schedule K-1, Partner's Share of Income, Deductions, Credits, etc., reported that petitioners had organized K3 Ventures on October 6, 2005, and that they had

contributed $416,020 to the entity and received cash distributions of $404,787 that same year. AO Bohné explained that, although he considered the Drummond Community Bank records and the partial transcript from Mr. Lander's resentencing hearing, he nevertheless concluded that the K-3 Ventures capital gain adjustment should be sustained, as follows:

> Primary position: The taxpayers have failed to substantiate the capital contribution amount to K3 Ventures, LLC which would support continued treatment of the cash distributions as a nontaxable return of capital under IRC [section] 731(a)(1).
>
> The taxpayers have failed to report and/or disclose any sources of taxable or non-taxable income to support the 2005, initial capital contribution to K3 Ventures LLC. Absent this documentation and substantiation of any amount of capital contributed, IRC [section] 731(b) provides that the recognized gain shall be treated as a gain from the sale of the partnership interest. Since this is the first year of operation, the taxpayers' gain will be treated as a short-term capital gain.
>
> Alternative position: If the taxpayer substantiates the capital contribution amount and the source is not a non-taxable source, that amount should be included as other income under IRC [section] 61. The sources of income which the taxpayer has reported are significantly less than asserted amount of the capital contributions. The character of the income will be determined by the source of any substantiated amounts of capital contributions.

On June 2, 2014, as a result of the audit reconsideration process the IRS abated $61,318 of the tax assessed for 2005 and interest attributable thereto. The IRS also abated the accuracy-related penalty of $29,742.

VIII. Collection Due Process Proceedings

On January 13, 2015, the IRS mailed to petitioners a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 in respect of the $183,057 balance then due on their account for 2005. Petitioners timely submitted to the Appeals Office a Form 12153, Request for a Collection Due Process or Equivalent Hearing, asserting that the underlying assessment was invalid because a notice of deficiency was not mailed to them for the year in issue. Petitioners also checked the following boxes on Form 12153: "I Cannot Pay Balance" and "Innocent Spouse Relief".[6]

Petitioners' case was assigned within the Appeals Office to Settlement Officer Iris Reubel (SO Reubel). During the course of the Appeals Office administrative process petitioners expressed disagreement with the amounts assessed for the taxable year 2005 and asserted that they had never received a notice of deficiency. SO Reubel's case activity notes indicate that, rather than focusing on the question whether petitioners had received a notice of deficiency, she reviewed a TXMODA transcript of account and concluded that petitioners were not entitled to challenge their underlying tax liability for 2005 because they

---

[6]It does not appear that petitioners attached Form 8857, Request for Innocent Spouse Relief, as Form 12153 directs.

had previously settled the matter with the Appeals Office and agreed to a reduction in the balance of tax due. Petitioners responded that they had not settled the matter with the Appeals Office, which led SO Reubel to undertake a months-long effort to retrieve IRS audit reconsideration records.

On September 3, 2015, the Appeals Office issued to petitioners a notice of determination sustaining the decision to file the Federal tax lien. Petitioners invoked the Court's jurisdiction under sections 6320 and 6330 by filing a timely petition for review of the collection action.

After filing an answer to the petition, respondent filed a motion to remand the case to the Appeals Office for a further administrative hearing. Specifically, respondent conceded that SO Reubel had erred in not addressing the question whether a notice of deficiency had been issued to petitioners for the year in issue. The Court granted respondent's motion to remand, and the Appeals Office ultimately concluded, in a supplemental notice of determination, that a notice of deficiency had been properly mailed to both petitioners at their last known address.

## Discussion

Section 6321 imposes a lien in favor of the United States upon all property and rights to property of a person liable for unpaid taxes after demand for

payment. Section 6320(a) provides that, within five business days after the day a notice of lien described in section 6323 is filed, the Secretary must notify the person, in writing, that a tax lien was filed and inform the person of his or her right to an administrative hearing in the Appeals Office before an impartial officer or employee. Section 6320(c) provides that the Appeals Office hearing generally shall be conducted consistent with the procedures set forth in section 6330(c), (d), (e), and (g).

In conducting the administrative hearing the Appeals Office must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(c)(1), (3)(A). The Appeals Office also must consider any issues raised by the person relating to the unpaid tax or the disputed collection action, including offers of collection alternatives, appropriate spousal defenses, and challenges to the appropriateness of the collection action. Sec. 6330(c)(2)(A), (3)(B). A person may challenge the existence or amount of his or her underlying tax liability if the person did not receive a notice of deficiency or did not otherwise have an opportunity to dispute such tax liability. Sec. 6330(c)(2)(B). Finally, the Appeals Office must consider whether the collection action balances the Government's need for efficient collection of tax against the person's concern that collection be no more intrusive than necessary. Sec. 6330(c)(3)(C).

A person may invoke the Court's jurisdiction and obtain judicial review of the final administrative determination by filing a timely petition for review under section 6330(d)(1). If the person's underlying tax liability is in dispute, the Court will review the matter de novo. Goza v. Commissioner, 114 T.C. 176, 181-182 (2000). Otherwise, the Appeals Office administrative determination is reviewed for abuse of discretion. Id. at 182. An abuse of discretion occurs if the Appeals Office exercises its discretion "arbitrarily, capriciously, or without sound basis in fact or law." Woodral v. Commissioner, 112 T.C. 19, 23 (1999).

## I. Validity of Assessments

As a threshold matter, petitioners maintain that respondent failed to show that the assessments entered against them for the taxable year 2005 are valid. Specifically, petitioners aver that respondent failed to mail a notice of deficiency to them before the assessments were entered in July 2012. The Appeals Office determined, however, that respondent mailed a notice of deficiency to petitioners by certified mail at their last known address in November 2011, no petition for redetermination was filed with the Court, and therefore the assessments are valid.

Section 6212(a) provides that if the Secretary determines that there is a deficiency in a taxpayer's income tax, he is authorized to send notice of the deficiency to the taxpayer by certified or registered mail. Section 6212(b)(1)

provides that it shall be sufficient if the notice of deficiency is mailed to the taxpayer's last known address.  See August v. Commissioner, 54 T.C. 1535, 1536 (1970).  The term "last known address" means the address that appears on the taxpayer's most recently filed and properly processed Federal tax return unless the Commissioner is given clear and concise notification of a different address.  Sec. 301.6212-2(a), Proced. & Admin. Regs.

Section 6212(b)(2) provides that, in the case of a joint return, and where the Commissioner is aware that spouses have established separate residences, a duplicate original of a joint notice of deficiency shall be sent to each spouse.  "It is well settled that a notice of deficiency mailed to a taxpayer's last known address is valid even though the taxpayer does not receive it."  Yusko v. Commissioner, 89 T.C. 806, 810 (1987).

The Commissioner bears the burden of proving proper mailing of a notice of deficiency by competent and persuasive evidence.  Cataldo v. Commissioner, 60 T.C. 522, 524 (1973), aff'd per curiam, 499 F.2d 550 (2d Cir. 1974); August v. Commissioner, 54 T.C. at 1536-1537.  The act of mailing may be proven by evidence of the Commissioner's mailing practices corroborated by direct testimony or documentary evidence of mailing.  Magazine v. Commissioner, 89 T.C. 321, 326 (1987); Cataldo v. Commissioner, 60 T.C. at 524; see Fed. R.

Evid. 406. A Form 3877 reflecting that the USPS received an item of certified mail from the Commissioner represents direct documentary evidence of the date and the fact of mailing. Magazine v. Commissioner, 89 T.C. at 324, 326-327. A properly completed Form 3877 also reflects compliance with IRS established procedures for mailing a notice of deficiency. Keado v. United States, 853 F.2d 1209, 1212-1213 (5th Cir. 1988).

Respondent offered the testimony of Corey Campbell, the group manager at the Jacksonville technical services office, Exhibit 5-R (a copy of the envelope and the notice of deficiency mailed to the Cross City address which the USPS had returned to the IRS undelivered), Exhibit 6-R (a file copy of the notice of deficiency mailed to the FCI Morgantown address), and Form 3877 to show that a notice of deficiency was properly mailed to petitioners for the taxable year 2005. Petitioners, however, reserved evidentiary objections (foundation, authentication, hearsay, relevance, and materiality) to Exhibits 5-R and 6-R.[7]

_____

[7]Petitioners withdrew similar objections to other documents that respondent offered into evidence (i.e., Exhibits 7-R to 11-R and 13-R). Oddly enough, although petitioners reserved objections to Exhibit 6-R, they offered the same document into evidence as part of Exhibit 12-P, which was admitted and made part of the record. In any event the Court considers petitioners' objections to Exhibit 6-R to have been resolved at trial when respondent acknowledged that another file copy of the notice of deficiency sent to the FCI Morgantown address (which also is part of Exhibit 12-P) represents a "complete" file copy (i.e., it bears
(continued...)

Petitioners' objections to Exhibit 5-R are rooted in the fact that the certified mail numbers assigned to the notice of deficiency on Form 3877 do not match the certified mail numbers that TE McGhee placed on IRS file copies of those documents. In particular Form 3877 shows that the copies of the notice of deficiency mailed to the Cross City and FCI Morgantown addresses were assigned certified mail Nos. 7010 0290 0002 4450 1988 and 7010 0290 0002 4450 1995, respectively. In contrast, IRS file copies of the notice of deficiency show that TE McGhee assigned certified mail number ending in 1995 to the notice mailed to the Cross City address and certified mail number ending in 1988 to the notice mailed to the FCI Morgantown address. Petitioners maintain that these discrepancies, coupled with RA Ayadi's statement that "[t]he Notice of Deficiency was not sent by the Revenue Agent that was previously working the case", casts doubt on the proposition that the IRS mailed a notice of deficiency to them for the year in issue. We disagree.

Contrary to petitioners' objections, respondent laid a proper foundation for and authenticated Exhibit 5-R. The Court finds that the document is exactly what

---

[7](...continued)
a certified mail number placed on the document by TE McGhee). Under the circumstances, petitioners' evidentiary objections to Exhibit 6-R (if any remain) are overruled.

respondent claims it is: a copy of the original envelope and notice of deficiency that respondent mailed to petitioners by certified mail at the Cross City address on November 16, 2011. The record reflects that the USPS was unable to deliver the Cross City notice of deficiency and returned it to the IRS.

IRS personnel prepare and mail thousands of notices of deficiency to taxpayers annually. In this case respondent established a proper foundation for Exhibit 5-R through the testimony of Mr. Campbell, who reviewed the documents in petitioners' administrative file, explained the routine and standard procedures that IRS personnel follow in preparing and mailing notices of deficiency, and described the various recordkeeping activities that the IRS undertakes in connection with notices of deficiency, including the preparation and retention of both Form 3877 and file copies of notices of deficiency and the routine handling of any notices of deficiency that the USPS returns to the IRS undelivered.

Mr. Campbell identified Exhibit 5-R as a public record maintained in the normal course by the Jacksonville technical services office, and petitioners' counsel was permitted to inspect the original documents at trial. See Fed. R. Evid. 901(a), (b)(7). Mr. Campbell's testimony established that Exhibit 5-R falls within the exception to hearsay for records of a regularly conducted business activity set

forth in rule 803(6) of the Federal Rules of Evidence. Exhibit 5-R is clearly relevant and material to the matters in dispute in this case.

The Court finds that the information recorded on Form 3877 and confirmed by USPS.com track and confirm records is correct and accurate and that TE McGhee inadvertently switched the certified mail numbers associated with the Cross City and FCI Morgantown notices when he prepared the file copies in question. Although TE McGhee's error caused confusion, it does not undermine the trustworthiness of the cumulative evidence related to the mailing of the notice of deficiency by certified mail outlined above. Consistent with the foregoing, petitioners' objections to the admission of Exhibit 5-R are overruled.[8]

In sum, the record contains ample and persuasive evidence that the IRS mailed the notice of deficiency to petitioners by certified mail at the Cross City and FCI Morgantown addresses. Respondent having carried his burden of proof on this point, and there being no dispute that the Cross City address was

---

[8]RA Ayadi's statement that "[t]he Notice of Deficiency was not sent by the Revenue Agent that was previously working the case", although vague and perhaps incomplete, is consistent with other documents in the record (summarized above) which show that the notice of deficiency was prepared by RA McElhattan and issued by TE McGhee, as opposed to RA Sports, who had conducted the original examination.

petitioners' last known address, it follows that the assessments entered against petitioners for the taxable year 2005 are valid.[9]

II. Challenge to the Underlying Tax Liability

As is relevant here, section 6330(c)(2)(B) authorizes a taxpayer to challenge "the existence or amount of the underlying tax liability" so long as the taxpayer "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." Although the parties agree that petitioners did not receive the notice of deficiency when it was mailed to them in November 2011, respondent maintains that petitioners took advantage of an opportunity to challenge their underlying tax liability before the Appeals Office as part of a postassessment audit reconsideration process. Thus, respondent contends that the Appeals Office correctly rejected petitioners' attempt to challenge their underlying tax liability a second time as part of the collection review process under sections 6320 and 6330.

Petitioners counter that they were not given a full and fair opportunity to challenge their underlying tax liability during the audit reconsideration process,

---

[9]The Court finds no fault with respondent's effort to comply with sec. 6212(b)(2) by mailing a duplicate original of the joint notice of deficiency to Mr. Lander at the FCI Morgantown address. Mr. Lander was in fact held at that facility on the date that the notice of deficiency was mailed.

that AO Bohné did not give full consideration to the matter, and, in any event, they are entitled to an opportunity for prepayment judicial review.

Although the phrase "opportunity to dispute" is not defined in the Code, the Secretary has promulgated regulations regarding section 6330(c)(2)(B) pursuant to the authority prescribed in section 7805(a). Consistent with the statute, section 301.6330-1(e)(1), Proced. & Admin. Regs., provides in pertinent part:

> (e) Matters considered at CDP hearing.--(1) In general. * * * The taxpayer also may raise challenges to the existence or amount of the underlying liability * * * for any tax period specified on the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for that tax liability or did not otherwise have an opportunity to dispute the tax liability. * * *

Section 301.6330-1(e)(3), Q&A-E2, Proced. & Admin. Regs., illustrates the provisions of paragraph (e) of the regulation in pertinent part as follows:

> Q-E2. When is a taxpayer entitled to challenge the existence or amount of the tax liability specified in the CDP Notice?
>
> A-E2. A taxpayer is entitled to challenge the existence or amount of the underlying liability for any tax period specified on the CDP Notice if the taxpayer did not receive a statutory notice of deficiency for such liability or did not otherwise have an opportunity to dispute such liability. Receipt of a statutory notice of deficiency for this purpose means receipt in time to petition the Tax Court for a redetermination of the deficiency determined in the notice of deficiency. An opportunity to dispute the underlying liability includes a prior opportunity for a conference with Appeals that was offered either before or after the assessment of the liability. An opportunity for a conference with Appeals prior to the assessment of

a tax subject to deficiency procedures is not a prior opportunity for this purpose.

In Lewis v. Commissioner, 128 T.C. 48, 61 (2007), the Court upheld an earlier version of this regulation as a reasonable interpretation of section 6330 in the context of the assessment and collection of a tax not subject to the deficiency procedures. The Courts of Appeals that have reviewed the regulation have reached the same conclusion. See Our Country Home Enters., Inc. v. Commissioner, 855 F.3d 773, 787 (7th Cir. 2017), aff'g 145 T.C. 1 (2015); Keller Tank Servs. II, Inc. v. Commissioner, 854 F.3d 1178, 1199 (10th Cir. 2017); Iames v. Commissioner, 850 F.3d 160, 164 (4th Cir. 2017).

As the Court explained in Lewis v. Commissioner, 128 T.C. at 60-61:

> Ultimately, while it is possible to interpret section 6330(c)(2)(B) to mean that every taxpayer is entitled to one opportunity for a precollection judicial review of an underlying liability, we find it unlikely that this was Congress's intent. As we see it, if Congress had intended to preclude only those taxpayers who previously enjoyed the opportunity for judicial review of the underlying liability from raising the underlying liability again in a collection review proceeding, the statute would have been drafted to clearly so provide. The fact that Congress chose not to use such explicit language leads us to believe that Congress also intended to preclude taxpayers who were previously afforded a conference with the Appeals Office from raising the underlying liabilities again in a collection review hearing and before this Court.

Although the collection action at issue in <u>Lewis</u> concerned a tax for which the Commissioner was not required to issue a notice of deficiency before assessment, the Court's reasoning and analysis in that case apply equally to the facts at hand. The operative provisions of section 6330(c)(2)(B) are stated in the disjunctive and require the Court to consider whether petitioners "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute such tax liability." There is no question that petitioners did not receive the notice of deficiency for the year in issue. Consistent with the Court's analysis in <u>Lewis</u>, however, we must also consider whether petitioners were afforded a conference with the Appeals Office (i.e., "an opportunity to dispute" the tax liability).

The record shows that petitioners were afforded a postassessment conference with the Appeals Office. After the IRS sent petitioners a notice and demand for payment of the tax due for 2005, they requested a reexamination of their tax liability. The audit reconsideration process that followed began with a review of the matter by the Examination Division. When the Examination Division reaffirmed the adjustments to petitioners' tax liability as determined in the notice of deficiency, they requested and were granted an independent review in the Appeals Office. AO Bohné engaged with petitioners, took a fresh look at the

record, conceded certain issues, and abated a significant portion of the tax previously assessed against them. Only then did the IRS file the tax lien that led to the additional collection review proceedings in the Appeals Office and this action.

Petitioners' argument that they were not given a full and fair opportunity to challenge their tax liability during the audit reconsideration process is belied by the record. In early 2014 petitioners met with AO Bohné and submitted additional documentation and written argument challenging the GenSpec and K3 Ventures tax adjustments. In May 2014 AO Bohné sent a letter to petitioners, along with an Appeals Case Memorandum, explaining that the IRS had conceded the GenSpec adjustment, interest related to that adjustment, and the section 6662(a) penalty. He went on to explain in detail, however, that after considering the information that petitioners had provided regarding the K3 Ventures capital gain, he would sustain that adjustment. Although AO Bohné invited petitioners to contact him with any additional questions, they did not do so.

The record shows that petitioners were fully engaged with AO Bohné, that he reviewed the evidence and arguments that they presented to him, and that in the end petitioners enjoyed a full and fair opportunity to challenge their underlying tax liability before the Appeals Office during the course of the audit reconsideration

process. Under the circumstances the Court is satisfied that the Appeals Office correctly determined, within the context of the collection review process, that petitioners had an opportunity to dispute their tax liability within the meaning of section 6330(c)(2)(B).[10]

## III. Remaining Issues

As previously mentioned, petitioners checked the following boxes on Form 12153: "I Cannot Pay Balance" and "Innocent Spouse Relief".[11] SO Reubel acknowledged in her case activity notes that petitioners had raised these two issues, and she initially requested that petitioners submit financial records to show that they were eligible for a collection alternative. Nevertheless, those issues were put aside as the parties engaged in a prolonged debate and investigation as to whether petitioners would be permitted to challenge the amount of their underlying liability for the year in issue.

---

[10]Petitioners are not left without an opportunity for judicial review. Petitioners may pay the tax, file a claim for refund, and if that claim is denied, file a refund suit in a Federal District Court or the Court of Federal Claims. See sec. 7422(a).

[11]A taxpayer's assertion that he or she cannot pay tax that is due, without more, is normally considered a request that the account be placed in currently not collectible status. See, e.g., Ragsdale v. Commissioner, T.C. Memo. 2019-33, at *34-*35.

Petitioners alleged in their petition, inter alia, that their spousal relief claim had not been considered by the Appeals Office and that they were interested in making installment payments to satisfy their tax liability. Having resolved that petitioners are barred from challenging the amount of their underlying liability in this proceeding, the Court will remand the case to the Appeals Office for a determination regarding petitioners' claim for spousal relief and whether petitioners are in a position to pay the balance due for the year in issue.

To reflect the foregoing,

<u>An appropriate order will be issued</u>.