# United States Tax Court

158 T.C. No. 8

ANGELA M. CHAVIS,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————

Docket No. 11835-20L.                                    Filed June 15, 2022.

————

During 2011–2014 P and her then husband were officers of a corporation that withheld payroll taxes from its employees' wages but did not pay those taxes over to the Government. R issued a Letter 1153, Notice of Trust Fund Recovery Penalty, informing P that he intended to assert trust fund recovery penalties (TFRPs) against her and her husband under I.R.C. § 6672. P did not challenge the proposed assessment, as she was entitled to do, and R thereafter assessed TFRPs totaling $146,682. In an effort to collect this unpaid liability R issued P a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing. P timely requested a collection due process (CDP) hearing.

During the CDP hearing P sought to challenge her underlying liability for the TFRPs. R explained that P could not challenge her underlying liability because she had, but declined to take advantage of, a prior opportunity to challenge the TFRPs upon receipt of the Letter 1153. P requested "innocent spouse" relief under I.R.C. § 6015, but R determined that such relief is unavailable for TFRP liabilities. Finally, P requested that her account be placed in "currently not collectible" status and that the lien be withdrawn. R considered these collection alternatives but determined that P did not qualify for either one. R issued a

notice of determination sustaining the lien filing, and P timely petitioned this Court.

     *Held*: Because P had a prior opportunity to challenge her TFRP liability upon receipt of the Letter 1153, she was not entitled to challenge her underlying tax liability at the CDP hearing or in this Court.

     *Held, further*, R correctly determined that P was not eligible for "innocent spouse" relief under I.R.C. § 6015 because her TFRP liability did not arise from any liability shown on a joint Federal income tax return.

     *Held, further*, R did not abuse his discretion in sustaining the collection action.

———————

Angela M. Chavis, pro se.

*Catherine S. Tyson*, for respondent.

OPINION

     LAUBER, *Judge*: In this collection due process (CDP) case petitioner seeks review pursuant to sections 6320(c) and 6330(d)(1) of the determination by the Internal Revenue Service (IRS or respondent) to uphold the filing of a Notice of Federal Tax Lien (NFTL).[1] Petitioner challenges her underlying tax liability, seeks "innocent spouse" relief, and contends that the IRS improperly denied her request to have her account placed in "currently not collectible" (CNC) status. Respondent has moved for summary judgment, contending that petitioner's underlying liability is not properly before us, that section 6015 does not apply to the tax liability at issue, and that the settlement officer did not abuse her discretion in sustaining the collection action. We agree and accordingly will grant the motion.

---

[1] Unless otherwise indicated, all statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, and all regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times. We round all monetary amounts to the nearest dollar.

*Background*

The following facts are derived from the parties' pleadings and motion papers, including a declaration that attached the administrative record. Petitioner resided in Missouri when she timely petitioned this Court.

Petitioner received a B.A. in economics and an M.A. in business administration, having completed coursework in finance, accounting, marketing, management, and organizational behavior. At the relevant times she and her then husband were associated with Oasys Information Systems, Inc. (Oasys), a C corporation established in 2008. Her then husband was the president of Oasys, and she held the office of secretary. According to IRS records, Oasys listed petitioner's home address as its business address.

Oasys withheld payroll taxes from its employees' wages but did not pay those taxes over to the Government. Having no success in collecting these taxes from Oasys, the IRS determined penalties against petitioner and her then husband under section 6672. That section provides that "[a]ny person required to collect, truthfully account for, and pay over" payroll taxes, who willfully fails to do so, shall be liable for a penalty "equal to the total amount of the tax evaded . . . or not accounted for and paid over." § 6672(a). Penalties determined under section 6672 are commonly called trust fund recovery penalties (TFRPs).

On July 13, 2015, the IRS issued petitioner Letter 1153, Notice of Trust Fund Recovery Penalty. The IRS sent this letter by certified mail to petitioner at her home address. Respondent has supplied a copy of U.S. Postal Service (USPS) Form 3811, Domestic Return Receipt, showing that petitioner received and accepted delivery of the Letter 1153 on July 16, 2015. Petitioner does not dispute that the signature on the Form 3811 is her signature.

Attached to the Letter 1153 was Form 2751, Proposed Assessment of Trust Fund Recovery Penalty. This form advised petitioner that Oasys had failed to pay over employment taxes totaling $146,682 for nine calendar quarters during 2011–2014. The IRS proposed to assess that sum against petitioner, determining that she, "[a]s Secretary, . . . had the responsibility of paying the employment taxes [but] paid other creditors over the US Gov't." The IRS proposed to assess joint and several liability for the same amount against her then husband,

determining that he, "[a]s President, . . . had the responsibility of paying the employment taxes [but] paid other creditors over the US Gov't."

The Letter 1153 informed petitioner: "You may appeal your case to the local Appeals Office." The letter included detailed instructions about the steps petitioner needed to take in order to appeal the proposed assessment and the issues that would be considered during the appeal. The letter warned: "If we do not hear from you within 60 days from the date of this letter . . . , we will assess the penalty and begin collection action."

Petitioner did not appeal the notice of proposed assessment. On November 16, 2015, the IRS accordingly assessed the TFRPs against her. Petitioner and her husband divorced in 2016, and the IRS was apparently successful in collecting a portion of the unpaid tax from him. In an effort to collect the balance of the liability, the IRS on May 16, 2019, issued petitioner a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing. This letter showed an aggregate unpaid balance of $126,919 on account of Oasys's payroll tax liability.

On May 29, 2019, petitioner timely requested a CDP hearing. In her hearing request she checked the boxes, "I cannot pay balance" and "Innocent Spouse Relief," and she requested withdrawal of the NFTL. She urged that her ex-husband was responsible for Oasys's payroll taxes, asserted that she "never received a notice for these taxes before," and contended that she "d[id] not make enough income to put a dent in the amount presented."

In July 2019 petitioner submitted Form 8857, Request for Innocent Spouse Relief. She sought relief from the TFRPs, alleging that she "had no dealings with Oasys." She stated that she "agreed to sign our 1040 tax return jointly [but] never signed any returns from Oasys." She did not request relief from any joint Federal income tax liability.

The IRS Cincinnati Centralized Innocent Spouse Operation (CCISO) processed petitioner's Form 8857 on July 26, 2019. On August 14, 2019, CCISO informed petitioner that she did not "meet the basic eligibility requirements" for relief under section 6015. CCISO explained that she did not qualify for relief because "[s]ection 6015 applies to jointly filed income tax returns," not payroll tax liabilities.

Petitioner's CDP case was then assigned to a settlement officer (SO) in the IRS Independent Office of Appeals (Appeals) in Houston, Texas. The SO reviewed CCISO's file, verified that the TFRPs had been

properly assessed, and confirmed that all other legal and administrative requirements had been met. The SO scheduled a telephone conference for November 19, 2019. Petitioner participated in the telephone conference as scheduled.

During the conference the SO explained that section 6015 relief was not available for TFRP liabilities. The SO also advised that petitioner could not now challenge her liability for the TFRPs because she had, but declined to take advantage of, a prior opportunity to challenge them upon receipt of the Letter 1153. Although petitioner said she did not recall receiving that letter, the SO drew her attention to her signature on the USPS Form 3811, which confirmed her receipt of the proposed assessment.

The SO and petitioner then discussed collection alternatives. The SO advised that, if petitioner wished to pursue CNC status, she needed to supply a completed Form 433–A, Collection Information Statement for Wage Earners and Self-Employed Individuals, together with supporting financial information. Petitioner submitted this information, and the SO referred it to an IRS collection specialist for analysis.

On January 30, 2020, the SO received a response from the collection specialist, who concluded that petitioner could pay $2,831 per month toward her TFRP liability and thus did not qualify for CNC status. The SO called petitioner that same day and went over the results of the specialist's computations. Petitioner disputed those calculations, urging that her income had been reduced and that home mortgage payments of $1,611 should be included in her monthly expenses. Petitioner supplied copies of her current pay stubs and mortgage statement to support her position.

On April 7, 2020, the SO recomputed petitioner's ability to pay. The SO calculated her revised monthly income as $5,361, including child support payments of $1,400. Employing an "allowable expense calculator," the SO adjusted petitioner's claimed monthly expenses, conforming those costs to the expenses allowable for the Missouri county in which she lived. *See* Internal Revenue Manual (IRM) 5.15.1.10 (Nov. 17, 2014). In calculating expenses the SO did not allow mortgage expenses because petitioner supplied no proof that she lacked equity in the property. Subtracting her allowable monthly expenses from her revised monthly income, the SO informed petitioner that she still did not qualify for CNC status because she had the ability to pay $1,685 a month.

Because petitioner sought no collection alternative apart from CNC status and lien withdrawal, the SO decided to close the case. On August 19, 2020, the IRS issued petitioner a notice of determination sustaining the NFTL filing. The notice explained that petitioner could not challenge her underlying liability for the TFRPs because she had a prior opportunity, upon receiving the Letter 1153, to challenge those penalties at Appeals. The notice determined that petitioner did not meet the criteria for lien withdrawal under section 6323(j) and that, for the reasons discussed previously, CNC status was not available as a collection alternative.

Petitioner timely petitioned this Court, challenging her underlying liability for the TFRPs and the propriety of the collection action. Respondent filed a Motion for Summary Judgment, to which petitioner timely responded. She concedes receiving the Letter 1153 in 2015 but urges that she was undergoing stress at that time in connection with her divorce proceedings. She alleges that she "had no involvement with the business operations of Oasys . . . and did not sign any tax filings associated with the company." She challenges the tax lien placed on her home and the SO's calculation of her ability to pay, urging that the "monthly amount that was determined is unreasonable and not economically feasible."

## *Discussion*

### A.  *Summary Judgment Standard*

Absent stipulation to the contrary, our decision in this case is appealable to the U.S. Court of Appeals for the Eighth Circuit. *See* § 7482(b)(1)(G). That court has held that, where de novo review is not applicable, the scope of review in a CDP case is confined to the administrative record. *See Robinette v. Commissioner*, 439 F.3d 455, 461 (8th Cir. 2006), *rev'g* 123 T.C. 85 (2004). Petitioner has supplied no reason to believe that the administrative record in this case is incomplete. Accordingly, in a case such as this, "summary judgment serves as a mechanism for deciding, as a matter of law, whether the agency action is supported by the administrative record and is not arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Belair v. Commissioner*, 157 T.C. 10, 17 (2021) (quoting *Van Bemmelen v. Commissioner*, 155 T.C. 64, 79 (2020)).

B.    *Standard of Review*

Neither section 6320(c) nor section 6330(d)(1) prescribes the standard of review that this Court should apply in reviewing an IRS administrative determination in a CDP case. The general parameters for such review are marked out by our precedents. Where the validity of the taxpayer's underlying liability is properly at issue, we review the IRS's determination de novo. *Goza v. Commissioner,* 114 T.C. 176, 181–82 (2000). Where the taxpayer's underlying liability is not properly at issue, we review the IRS's decision for abuse of discretion only. *Id.* at 182. Abuse of discretion exists when a determination is arbitrary, capricious, or without sound basis in fact or law. *See Murphy v. Commissioner*, 125 T.C. 301, 320 (2005), *aff'd*, 469 F.3d 27 (1st Cir. 2006).

C.    *Underlying Liability*

A taxpayer may challenge the existence or amount of her underlying tax liability in a CDP case only if she "did not receive any statutory notice of deficiency for such tax liability or did not otherwise have an opportunity to dispute" it. § 6330(c)(2)(B). TFRPs are "assessable penalties" and thus are not subject to deficiency procedures. *See Chadwick v. Commissioner*, 154 T.C. 84, 91 (2020). However, a taxpayer has the opportunity to dispute her liability for a TFRP by filing an appeal with the IRS when she receives a Letter 1153. *See Mason v. Commissioner*, 132 T.C. 301, 317–18 (2009); *Lewis v. Commissioner*, 128 T.C. 48, 61 (2007); *Thompson v. Commissioner*, T.C. Memo. 2012-87, 103 T.C.M. (CCH) 1470, 1472; Treas. Reg. § 301.6320-1(e)(3), Q&A-E2.

The IRS sent petitioner a Letter 1153 in July 2015. She acknowledges having received that letter, and the USPS Form 3811 bears her signature. The Letter 1153 informed petitioner of her right to appeal the proposed TFRP assessment and outlined the steps she needed to take. Because she had an opportunity to dispute her TFRP liability upon receipt of the Letter 1153 but declined to do so, she was not entitled to challenge her underlying tax liability at the CDP hearing and may not advance such a challenge in this Court. *See Chadwick*, 154 T.C. at 89. Accordingly, we review the SO's actions for abuse of discretion only.

D.    *Abuse of Discretion*

In deciding whether the SO abused her discretion we consider whether she: (1) properly verified that the requirements of any applicable law or administrative procedure have been met; (2) considered any

relevant issues petitioners raised; and (3) determined whether "any proposed collection action balances the need for the efficient collection of taxes with the legitimate concern of [petitioner] that any collection action be no more intrusive than necessary." § 6330(c)(3); *see* § 6320(c). Our review of the record establishes that the SO properly discharged all of her responsibilities under the statute.

### 1. *Innocent Spouse Relief*

During the CDP hearing petitioner urged that she was entitled to "innocent spouse" relief under section 6015. The SO advised petitioner that she was not eligible for such relief because her TFRP liabilities arose from Oasys's unpaid payroll taxes, not from a joint Federal income tax return. The SO made this determination after reviewing petitioner's Form 8857 and the correspondence from CCISO.[2]

Section 6015 is captioned "Relief from joint and several liability on joint return." Section 6015(a)(1) provides that "an individual who has made a joint return may elect to seek relief under the procedures prescribed under subsection (b)," which sets forth procedures "applicable to all joint filers." Section 6015(a)(2) provides that an individual may "elect to limit [her] liability for any deficiency with respect to such joint return in the manner prescribed under subsection (c)," which sets forth procedures applicable for spouses who are legally separated or no longer living together.

Subsections (b) and (c) both specify rules for obtaining relief from liabilities that are shown on (or should have been shown on) a joint Federal income tax return. *See* § 6015(b)(1)(A) and (B) (presupposing that "a joint return has been made" and that "on such return there is an understatement of tax"); § 6015(c)(1) (providing that a person "who has made a joint return" may be partially relieved of "liability for any deficiency which is assessed with respect to the return").

---

[2] Although petitioner is precluded from challenging her underlying liability, "[t]he limitations imposed under section 6330(c)(2)(B) do not apply to spousal defenses . . . [because] the taxpayer is not disputing the amount or existence of the liability itself, but asserting a defense to the liability." Treas. Reg. § 301.6320-1(e)(3), Q&A-E3. We need not decide whether the SO's resolution of petitioner's spousal defense challenge should be reviewed de novo rather than for abuse of discretion. We would decide this issue the same way under either standard because (as explained in the text) it presents a purely legal question.

Petitioner's TFRP liabilities were not shown on, and did not arise from the filing of, a joint Federal income tax return. Rather, her TFRP liabilities arose from her failure to discharge her duty, as an officer of Oasys, to ensure that payroll taxes collected from the company's workers were properly paid over to the Department of the Treasury. Petitioner was therefore not eligible for relief under section 6015(b) or (c).

Subsection (f) provides that "equitable relief" may be afforded to a taxpayer if "relief is not available to such individual under subsection (b) or (c)." § 6015(f)(1). "Under procedures prescribed by the Secretary," such relief may be available if, "taking into account all the facts and circumstances, it is inequitable to hold the individual liable for any unpaid tax or any deficiency (or any portion of either)." *Ibid*. The SO determined that petitioner was likewise ineligible for relief under subsection (f).

The Commissioner has specified, in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, the procedures governing equitable relief. These procedures confirm that subsection (f), like subsections (b) and (c), applies only to joint income tax liabilities. *See* Rev. Proc. 2013-34, § 1.01, 2013-43 I.R.B. at 397 ("This revenue procedure provides guidance for a taxpayer seeking equitable relief from income tax liability . . . ."). Indeed, the IRS will not consider a taxpayer's request for equitable relief unless she meets seven "threshold conditions," one of which is that the "income tax liability from which the requesting spouse seeks relief" is attributable to the non-requesting spouse. *Id.* § 4.01(7), 2013-43 I.R.B. at 399. Another condition is that "[t]he requesting spouse [must have] filed a joint return for the taxable year" for which relief is sought. *Id.* § 4.01(1).

The IRS assessed TFRPs against petitioner and her ex-husband upon determining that they were both responsible for Oasys's failure to remit payroll taxes to the Government. The IRS did not determine any income tax deficiencies against petitioner and has not attempted to collect any unpaid tax shown on any joint return that she signed. Although a TFRP liability is a form of "unpaid tax," section 6015(f) applies only to unpaid taxes or deficiencies arising from joint income tax returns. *See* Treas. Reg. § 1.6015-1(a)(1)(iii) (stating that section 6015(f) applies only to "joint and several liability for Federal income tax"); H.R. Rep. No. 105-599, at 254 (1998) (Conf. Rep.), *reprinted in* 1998-3 C.B. 747, 1008 (stating that section 6015(f) applies only to "any unpaid tax or deficiency arising from a joint return"). The SO therefore did not err when she advised petitioner that innocent spouse relief was not available to her.

2.    *Collection Alternatives*

Having rejected petitioner's underlying liability and spousal defense challenges, the SO proceeded to consider collection alternatives. The principal issue petitioner raised was her entitlement to have her account placed in CNC status. To be entitled to this collection alternative taxpayers must demonstrate that, on the basis of their assets, equity, income, and expenses, they have no apparent ability to make payments on the outstanding tax liability. *See Foley v. Commissioner*, T.C. Memo. 2007-242, 94 T.C.M. (CCH) 210, 212; IRM 5.16.1.1 (Sept. 18, 2018).

A taxpayer's ability to make payments is determined by calculating the excess of income over necessary living expenses. *Rosendale v. Commissioner*, T.C. Memo. 2018-99, 116 T.C.M. (CCH) 4, 6; IRM 5.16.1.2.9 (Sept. 18, 2018). An SO does not abuse her discretion when she employs local and national standards to calculate the taxpayer's expenses and ability to pay. *See Friedman v. Commissioner*, T.C. Memo. 2013-44, 105 T.C.M. (CCH) 1288, 1290 (noting that burden is on taxpayer to justify departure from local standards). In reviewing for abuse of discretion, the Court does not substitute its judgment for that of the SO or recalculate a taxpayer's ability to pay. *See Norberg v. Commissioner*, T.C. Memo. 2022-30, at *5; *O'Donnell v. Commissioner*, T.C. Memo. 2013-247, 106 T.C.M. (CCH) 477, 481.

The collection specialist to whom the SO initially referred petitioner's request concluded that she did not qualify for CNC status because she could pay $2,831 per month toward her TFRP liability. The SO agreed that petitioner's income should be adjusted downward and recalculated her ability to pay as $1,685 per month. In determining this figure, the SO calculated allowable monthly expenses by reference to local standards prevailing in the Missouri county where petitioner resided. This caused a downward adjustment to certain expenses that petitioner reported on her Form 433–A.

Petitioner contends that "the calculated monthly amount that was determined was unreasonable and not economically feasible." This contention is based in part on the expenses petitioner claimed on her Form 433–A, without reference to prevailing local standards. The SO was authorized to rely on those standards in assessing petitioner's ability to pay, and it was her burden to justify a departure from the local standards. *Friedman*, 105 T.C.M. (CCH) at 1290. Petitioner has not satisfied that burden.

Petitioner challenges two aspects of the SO's calculation apart from the use of prevailing local expense standards. First, she urges that the SO should have included home mortgage expenses of $1,611 per month. The SO did not allow this expense because petitioner supplied no proof "that there was no equity in the home." *See* IRM 5.16.1.2.9(1) ("An account should not be reported as CNC if the taxpayer has income or equity in assets, and enforced collection of the income or assets would not cause hardship.").

In her response to the summary judgment motion, petitioner says that she "do[es] not have access" to any equity in the property. Although the meaning of this statement is not entirely clear, we find it beside the point. Petitioner does not dispute that she neglected to provide any evidence to the SO regarding her possession of equity in the property. The SO was obligated to make a decision based on the evidence that petitioner submitted during the CDP hearing. The SO did not abuse her discretion by neglecting to consider evidence petitioner did not submit.

Petitioner also alleges that the monthly child support she receives from her ex-husband was recently reduced, as of July 2021, from $1,400 to $1,000 per month. Again, this information was not available to the SO when she made her decision in August 2020. In any event a $400 reduction in her monthly income would not have altered the SO's determination that petitioner was not entitled to CNC status.

The other collection alternative petitioner proposed was withdrawal of the NFTL. Section 6323(j)(1) authorizes that relief if (1) "the filing of such notice was premature or otherwise not in accordance with administrative procedures," (2) the taxpayer has entered into an installment agreement that renders the NFTL unnecessary, (3) withdrawal of the NFTL "will facilitate the collection of the tax liability," or (4) withdrawal of the NFTL "would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States."

The notice of determination correctly concluded that petitioner had failed to establish the existence of any of these conditions. The second and fourth factors are inapplicable here. Petitioner did not contend that the NFTL filing was premature or improper. And she offered no evidence that withdrawal of the NFTL would facilitate collection of the TFRP liability.

The only collection alternatives petitioner proposed, in her CDP hearing request or subsequently, were to have her account placed in

CNC status and to have the NFTL withdrawn. The SO did not abuse her discretion in denying those forms of relief. In her response to the summary judgment motion petitioner suggests that she might be able to make some payment toward her tax liability, albeit in a monthly amount smaller than the SO calculated. If so, petitioner is free to submit to the IRS at any time, for its consideration and possible acceptance, a collection alternative in the form of an installment agreement or an offer-in-compromise, supported by up-to-date financial information (including any relevant information about equity in her home and reduced child-support payments).

To implement the foregoing,

*An appropriate order and decision will be entered for respondent.*